DALLAS INDEPENDENT SCHOOL DISTRICT, Sandy Kress, Chad Woolery, Hollis Brashear, William Keever, Lynda McDow, Kathleen Leos, Dan Peavy, Yvonne Ewell, Jose Plata, Larry Friedman, Alan Rich, David Reese, Friedman & Associates, P.C., Dennis Eichelbaum, and Schwartz & Eichelbaum, P.C., Appellants/Cross–Appellees,

v.

Richard E. FINLAN, Ed Grant, and Ronald Hinds, Appellees/Cross–Appellants,

v.

Lawrence Friedman, Alan Rich, and Friedman & Associates, P.C. Appellees.

No. 05–97–00734–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 2000.

Rehearing Overruled Oct. 3, 2000.

Alan B. Rich, Baron & Budd, James E. Coleman, Jr., Jeffrey S. Levinger, Amy Katherine C. Hunt, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, Melinda R. Burke, Shannon, Gracey, Ratliff & Miller, Fort Worth, Gary D. Elliston, DeHay & Elliston, Dallas, for appellant.

Jeanne Crandall, Reyna, Hinds & Crandall, Dallas, for appellee.

Before Chief Justice THOMAS and Justices WHITTINGTON and STEWART[1]

## OPINION ON REHEARING

ANNETTE STEWART, Justice (Retired).

We partially grant Richard E. Finlan's and Ed Grant's motions for rehearing, which were filed on June 9, 2000. We withdraw our prior opinion and vacate our prior judgment, both dated May 25, 2000. The following is now the opinion of the Court.

This appeal arises from a suit for damages brought by the Dallas Independent School District (DISD), alleging civil conspiracy against four defendants: Richard Finlan, Don Venable, Ronald Hinds, and Ed Grant. Finlan filed a counterclaim, alleging in two separate counts that his civil rights had been violated by DISD, DISD officials, and DISD attorneys; that he was entitled to a writ of mandamus to view the backup documents to campaign finance reports certain named DISD trustees filed pursuant to the Texas Election Code; and that he had been defamed by some of the DISD attorneys. Hinds also filed a claim alleging that some of the DISD attorneys defamed him as well and conspired to defame him. All of the parties except Venable moved for summary judgment.

The trial court granted summary judgment dismissing DISD's civil conspiracy claims, granted Finlan's summary judgment motion seeking the campaign finance report backup documents, granted DISD's, DISD officials' and DISD attorneys' summary judgment motions against Finlan's civil rights claims, and granted DISD attorneys' motion for summary judgment against both Finlan's and Hinds' defamation claims. The trial court did not supply the ground or grounds relied on for any of its rulings.

We affirm in part, reverse and render in part, and reverse and remand in part. In our analysis, we use the following terms to refer to the various parties:

DISD Dallas Independent School District;

DISD Trustees All DISD trustees involved in this case as Appellants/Cross–Appellees because of their affiliation with DISD as former or current DISD trustees (Sandy Kress, Hollis Brashear, William Keever, Lynda McDow, Kathleen Leos, Dan Peavy, Yvonne Ewell, and Jose Plata);

Friedman & Associates All parties affiliated with Friedman & Associates (Friedman & Associates, P.C., Larry Friedman, Alan Rich, and David Reese);

DISD Attorneys All attorneys or law firms that are parties to this action on the basis of their current or former representation of DISD Parties (Friedman & Associates, P.C., Larry Friedman, Alan Rich, David Reese, Schwartz & Eichelbaum, P.C., and Dennis Eichelbaum);

DISD Parties All parties affiliated with the DISD (DISD, DISD Trustees, Superintendent Chad Woolery, and DISD attorneys).

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

The standards for reviewing summary judgment are well settled. *See*

1. The Honorable Annette Stewart, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The standards are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* The provisions of rule 166a, the summary judgment rule, apply to both defendants and plaintiffs who move for summary judgment. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). A defendant who conclusively negates at least one essential element of each theory pleaded by the plaintiff is entitled to summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *International Union United Auto. Aerospace & Agric. Implement Workers of America Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex.App.-Dallas 1991, writ denied). A defendant can also prevail by pleading and conclusively establishing every element of an affirmative defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *Johnson Controls*, 813 S.W.2d at 563; *Deer Creek Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198, 200 (Tex.App.-Dallas 1990, no writ).

■ When the plaintiff and defendant both move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993); *American States Ins. Co. of Tex. v. Arnold*, 930 S.W.2d 196, 200 (Tex.App.-Dallas 1996, writ denied). When both sides file motions for summary judgment and one is granted and one is denied, we review all questions presented. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Nationwide Property & Cas. Ins. Co. v. McFarland*, 887 S.W.2d 487, 490 (Tex.App.-Dallas 1994, writ denied).

■ When the trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we affirm the judgment if any theory advanced has merit. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). To prevail, the appellant must show each of the independent arguments alleged in the motion is insufficient to support summary judgment. *Holloway v. Starnes*, 840 S.W.2d 14, 18 (Tex.App.-Dallas 1992, writ denied); *Insurance Co. of N. Am. v. Security Ins. Co.*, 790 S.W.2d 407, 410 (Tex.App.-Houston [1st Dist.] 1990, no writ).

## DISD'S and DISD TRUSTEES' POINTS OF ERROR

The DISD Trustees contend the trial court erred by granting a common law writ of mandamus ordering certain DISD trustees to provide Finlan with backup documents to their campaign finance reports. DISD contends the trial court erred by (1) dismissing with prejudice DISD's conspiracy claims against Hinds, Finlan, and Grant; (2) considering the summary judgment evidence tendered by Hinds, Finlan, and Grant on DISD's conspiracy claims; and (3) prohibiting necessary discovery before granting summary judgment. DISD's and the DISD Trustees' first point of error generally asserts the trial court erred in granting summary judgment. No specific error is stated. Accordingly, we address each specific point of error below.

### 1. Backup Financial Records For DISD Trustees

#### (DISD Trustees' Points of Error Nos. 2—5)

In their second point of error, the DISD Trustees contend they need not produce

the record of the information upon which their campaign finance reports are based because these backup documents are not "election records" under the Texas Election Code. In their third point, they contend a common law writ of mandamus is not available to obtain these backup documents. In their fourth point, they assert Finlan did not meet the legal requirements to obtain a common law writ of mandamus. In their fifth point, they argue judgment should be rendered in their favor. For the reasons set forth below, we hold backup documents to campaign finance reports are not "election records" subject to disclosure, and we render judgment for the DISD Trustees on this issue.

### a. Background

The DISD Trustees, as officeholders, must maintain a record comprised of backup information for the campaign finance reports which they are required to file pursuant to the Texas Election Code.[2] After DISD filed this suit, Finlan added the trustees to the case and filed an action against them for a "common law writ of mandamus," seeking to force the disclosure, to Finlan, of these backup documents. Finlan filed a motion for summary judgment seeking such disclosure, arguing that the backup documents constituted "election records" as that term is used under the public information provision of the code.

### b. Applicable Law

#### i. Mandamus Standard of Review

A common law mandamus action has three requisites: a legal duty to perform a nondiscretionary act, a demand for performance, and a refusal. *Stoner v. Massey,* 586 S.W.2d 843, 846 (Tex.1979) (orig.proceeding); *Dallas County Appraisal Dist. v. Funds Recovery, Inc.,* 887 S.W.2d 465, 467 n. 5 (Tex.App.—Dallas 1994, orig. proceeding) [leave denied] ); *Texas Dep't of Pub. Safety v. Gilbreath,*

842 S.W.2d 408, 413 (Tex.App.-Austin 1992, orig. proceeding). A mandamus will issue only to correct a clear abuse of discretion for which there is no adequate remedy by appeal. *See National Med. Enters., Inc. v. Godbey,* 924 S.W.2d 123, 128 (Tex.1996) (orig.proceeding); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker,* 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding)). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker,* 827 S.W.2d at 840. The trial court abuses its discretion when it does not analyze or apply the law correctly. *Id.* We defer to the district court's resolution of fact issues, unless it is clear from the record that only one decision could have been reached. *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 729 (Tex.1993) (orig.proceeding) (citing *Walker,* 827 S.W.2d at 839–40)).

#### ii. Texas Election Code

Candidates and officeholders are required to file sworn campaign finance reports of their campaign contributions, loans, and expenditures. TEX. ELEC.CODE ANN. §§ 254.031(a), 254.061, 254.091 (Vernon Supp.2000). They also are required to maintain a record containing the information necessary for filing these reports, and they must preserve this record for at least two years beginning on the filing deadline for the report containing that information. TEX. ELEC.CODE ANN. §§ 254.001(a), (c), and (d) (Vernon Supp.2000). Section 254.040 requires each authority with whom reports are filed to preserve them for at least two years after the filing date. TEX. ELEC.CODE ANN. § 254.040(a) (Vernon Supp.2000). The code also provides for public inspection of filed reports, but it does not have any similar provision about

**2.** TEX. ELEC. CODE ANN. (Vernon Supp. 2000), referred to hereinafter as "the code."

the record of backup information from which the reports are prepared. *See* Tex. Elec.Code Ann. § 254.040(b) (Vernon Supp.2000). Another provision of the code provides that all "election records" are public information, unless otherwise provided by the code or chapter 552 of the Texas Government Code. Tex. Elec.Code Ann. § 1.012(c) (Vernon Supp.2000).

### c. Application of Law to Facts

Finlan contends that the record each trustee must maintain to prepare the required reports is public information. He relies on the preservation requirements of section 254, above, and the provisions of section 1.012 of the code stating that "... an election record that is public information shall be made available to the public during regular business hours of the record's custodian." *Id.* at § 1.012(a). Because section 254.001(c) of the code provides trustees as candidates or officeholders must preserve a record of "information" used to prepare required reports, Finlan argues this record is an "election record that is public information," and that a trustee is the record's "custodian" under section 1.012(a).

■■■■ Although the code defines twenty-four specialized terms, "election records" is not defined. *See* Tex. Elec. Code Ann. § 1.005 (Vernon 1986 and Supp. 2000). The meaning of a statutory term, if not specifically defined, must be ascertained by examining the language and intent of the legislature. *Dallas Morning News Co. v. Board of Trustees of Dallas Indep. Sch. Dist.,* 861 S.W.2d 532, 535 (Tex.App.-Dallas 1993, writ denied); *Estate of Padilla v. Charter Oaks Fire Ins. Co.,* 843 S.W.2d 196, 198 (Tex.App.-Dallas 1992, writ denied). Importantly, ascertaining the term's meaning is determined primarily by how that term is used throughout the act as a whole. *Dallas Morning News Co.,* 861 S.W.2d at 535; *Estate of Padilla,* 843 S.W.2d at 198. Statutory terms should be interpreted consistently in every part of an act. *Dallas*

*Morning News Co.,* 861 S.W.2d at 535; *Estate of Padilla,* 843 S.W.2d at 198.

Section 1.012 provides that some election records are "public information," but does not itself define the term "election record." *See* Tex. Elec.Code Ann. § 1.012 (Vernon Supp.2000). However, section 1.013 divides documents that must be retained under the code into various categories:

> After expiration of the prescribed period for preserving voted ballots, election returns, other election records, or other records that are preserved under this code, the records may be destroyed or otherwise disposed of....

Tex. Elec.Code Ann. § 1.013 (Vernon 1986).

Section 1.013 creates two general categories of documents: (1) "election records" and, (2) "other records that are preserved" under the code. *Id.* As for the first category, the term "other election records" is to be interpreted as covering records of the same kind or class as the "voted ballots" and "election returns" specifically named. *See Villarreal v. State,* 810 S.W.2d 419, 422 (Tex.App.-Dallas 1991, writ denied).

■■■ Section 1.013 lists voted ballots and election returns as types of election records, but it also evidences not all records under the code are election records. Tex. Elec.Code Ann. § 1.013 (Vernon Supp.2000). "Election records" also include ballot boxes (containing voted ballots), tally sheets, absentee ballots, applications for absentee ballots in person and by mail, signature rosters for election day voting, and poll lists. *Garcia v. Avila,* 597 S.W.2d 400, 405 (Tex.Civ.App.-San Antonio 1980, writ dism'd). These items, and items like them, also constitute "precinct election records," as defined and used in chapter 66 of the code. In addition, section 273.003 lists election returns, voted ballots, and the signature roster as specific types of election records. Tex. Elec.Code Ann. § 273.003 (Vernon 1986). Based on the

uses of the term "election records" and the examples listed within the code, we conclude "election records" are those which memorialize the actual election and the actual conduct of the election.

 The second category of documents listed in section 1.013, "other records that are preserved under this code," includes both the record of information to support campaign finance reports and the reports themselves, which must be preserved, respectively, by the trustee and the authority with whom the report is filed. TEX. ELEC.CODE ANN. §§ 254.001(d), 254.040(a) (Vernon Supp.2000). However, only the campaign finance report is "required to be filed" under chapter 15, and it is the only record of the two for which the code provides public inspection. *Id.* § 254.040(b). If the legislature had intended this record of information under section 254.001 to be available to the public, it could easily have provided for that as it did for the campaign finance reports. Every word excluded from a statute is presumed to have been excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981). Thus, we hold that the record of information a candidate or officeholder is required to maintain under section 254.001 is not "an election record" subject to public inspection. *Accord* Op. Tex. Ethics Comm'n No. 308 (1996) ("[N]othing in title 15 of the Election Code ... makes ... 'backup records' public records.")

In their fourth point of error, the DISD Trustees contend Finlan has no clear right to obtain the backup documents he seeks; therefore, the trial court improperly granted a "common law writ of mandamus." We agree the trial court had no legal basis for granting Finlan access to the backup documents because these records of information are not "election records" subject to public inspection. *See Walker*, 827 S.W.2d at 839. Accordingly, the trial court

clearly abused its discretion. *See id.* We sustain the DISD Trustees' fourth point of error to the extent it contends there is no legal basis for the trial court's decision.

The DISD Trustees' fifth point of error contends judgment should be rendered in favor of the individual trustees that they need not disclose their backup documents to Finlan. We agree because Finlan is not legally entitled to this information. *See Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). We sustain the fifth point of error and render judgment that the DISD Trustees need not provide Finlan with the backup documents to support their finance reports.

Because of our disposition of points of error two, four, and five, we need not address the Trustees' third point of error, which contends the common law writ of mandamus has been supplanted by the code in this case. *See* TEX.R.APP. P. 47.1.

### 2. DISD's Conspiracy Claims Against Finlan, Grant, and Hinds

#### (DISD Points of Error 6—9)

DISD alleged a conspiracy among Finlan, Venable, Grant (former trustee), and Hinds (attorney) (the "Conspiracy Defendants"). In its sixth point, DISD contends Finlan, Hinds, and Grant "failed to conclusively disprove the existence of a conspiracy...." [3] In its seventh point, DISD contends the trial court erroneously granted summary judgment because the trial court should have granted, at most, special exceptions or dismissed its conspiracy claim without prejudice. In its eighth point, DISD contends the trial court erred in granting summary judgment because it was not allowed to conduct necessary discovery on its conspiracy claim. In its ninth point, DISD argues the trial judge erred in overruling its objections to the summary judgment affidavits filed by the conspiracy defendants Finlan, Grant, and

---

**3.** Venable did not move for summary judgment against DISD on DISD's conspiracy claims, and is not a party to this appeal.

Hinds, contending the affidavits are conclusory and should not be admitted on the issues of intent and motive.

### a. Background

In September 1992, Finlan and Venable wrote a letter to DISD's investment bankers, Goldman, Sachs & Company, apprising them of their own pending litigation against DISD under the Texas Open Records Act seeking production of records pertaining to the issuance of bonds and usage of bond fund proceeds. Grant was a member of the school board at that time.

In October 1992, DISD sued Finlan and Venable seeking over $270 million in damages for tortious interference with the relationship and contract between the board and Goldman, Sachs & Company and for defamation of DISD. In response to the "tortious interference suit," Finlan and Venable filed civil rights counterclaims against DISD and its individual board members. Finlan, proceeding pro se, filed a plea in bar that the trial court granted, dismissing DISD's claims as to him. DISD then non-suited its action against all parties, but the counterclaim remained and part of that suit was abated.

In 1994, Finlan and Venable filed an action in the 162nd District Court against DISD, its superintendent, the individual trustees (including Grant), and Schwartz & Eichelbaum, DISD's attorneys. They alleged the filing of the tortious interference suit violated their civil rights under section 1983.[4] Venable was represented by Hinds, but Finlan again proceeded pro se. In that suit, Grant allegedly approached Hinds and stated he wanted to confess judgment in the 162nd civil rights suit and file an action for legal malpractice against Dennis Eichelbaum, Leonard Schwartz, and the firm of Schwartz & Eichelbaum, P.C., who allegedly had advised the trustees in 1992 to file the tortious interference suit against Finlan and Venable. Hinds subsequently represented Grant as a plaintiff on his cross-claims, and DISD argues

he also represented Grant as a defendant to the civil rights claim.

In the 162nd civil rights suit, Finlan filed a motion for summary judgment against Grant. Finlan and Grant later presented an agreed judgment in favor of Finlan for $300,000 to the judge who then signed it. That judgment has never been severed from the main case and that case is still pending. The events in that case are the basis for DISD's civil conspiracy claim now before the court.

### b. Applicable Law

#### i. Fraud

The elements of a common law fraud claim are: (1) a material representation; (2) that was false; (3) that the speaker knew was false at the time it was made; (4) that was made with the intention of being acted upon; (5) that the party acted in reliance; and (6) that injury was suffered. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983).

#### ii. Civil Conspiracy

An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983); *Futerfas v. Park Towers,* 707 S.W.2d 149, 156 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Massey,* 652 S.W.2d at 934; *Futerfas,* 707 S.W.2d at 156.

### c. Application of Law to Facts

The essence of DISD's conspiracy claim is that the Conspiracy Defendants con-

---

4. 42 U.S.C.A. § 1983 (West Supp.2000), hereinafter referred to as "section 1983."

spired to obtain a judgment against DISD or the DISD Trustees through the 162nd District Court civil rights suit, which DISD alleges is fraudulent. DISD's live pleading alleged a civil conspiracy against Venable, Finlan, Grant, and Hinds, in part, as follows:

> Venable and Finlan would file suit against DISD trustees [including Grant] for supposedly violating Venable's and Finlan's "civil rights".... Hinds would represent Venable in the Civil Rights Suit, *and* Hinds would represent Grant (whom he [Hinds] sued in the Civil Rights Suit on behalf of Venable). On information and belief, Grant was recruited into this conspiracy by Venable and Finlan by use of threats that they would gain access to financial records relating to Grant's school board campaign, which records would embarrass Grant and even expose him to civil or criminal liability....

\* \* \*

The DISD has an escrow account with the Texas Association of School Boards, Inc. ("TASB") out of which, under certain circumstances, judgments against the DISD and its Trustees may be satisfied. It is this account which is the object of the conspirators' desires. The conspirators' object was or is to obtain consent judgments against Grant, and collect those judgments from the TASB escrow fund.

The question in the trial court and on appeal is *not* whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's cause of action, but whether the summary judgment proof *establishes as a matter of law* that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs*, 450 S.W.2d at 828. Moreover, the burden does not shift to the plaintiff to present evidence creating a fact issue until the defendant produces evidence entitling it to summary judgment as

a matter of law. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). If a movant's evidence only raises a fact issue, the non-movant need not offer contradictory proof. *Swilley*, 488 S.W.2d at 67. Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Futerfas*, 707 S.W.2d at 155. With these standards in mind, we analyze the evidence proffered by Finlan, Grant, and Hinds to determine whether they disproved DISD's conspiracy claim as a matter of law.

### i. Summary Judgment for Finlan

Finlan's February 28, 1996 motion for partial summary judgment attacked DISD's RICO and civil conspiracy claims. On April 17, 1996, DISD nonsuited its RICO claims in its third amended petition. On April 22, 1996, Finlan filed "Finlan's Motion for Partial Summary Judgment— DISD's Civil Conspiracy Claim and Motion for Sanctions."

A substituted or amended motion for summary judgment supercedes and supplants the previous motion, which may no longer be considered. *Frias v. Atlantic Richfield Co.*, 999 S.W.2d 97, 102 (Tex. App.-Houston [14th Dist.] 1999, pet. denied); *State v. Seventeen Thousand & No/ 100 Dollars U.S. Currency*, 809 S.W.2d 637, 639 (Tex.App.-Corpus Christi 1991, no writ). In Finlan's brief, he states his only live summary judgment motion was his motion filed on April 22, 1996. We agree. Therefore, when determining whether Finlan properly obtained summary judgment, we do not consider his motions filed prior to April 22, 1996.

Finlan moved for summary judgment on the ground that "DISD's instant civil conspiracy suit is, in reality, a malicious prosecution suit." A defendant moving for summary judgment is required

to meet the plaintiff's causes of action as pleaded and to demonstrate that the plaintiff cannot prevail. *Cook v. Brundidge, Fountain, Elliott & Churchill,* 533 S.W.2d 751, 759 (Tex.1976); *Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788, 795 (Tex.App.-Beaumont 1988, writ denied). DISD's third amended original petition pleaded civil conspiracy, not malicious prosecution of a civil suit. The elements of a civil conspiracy claim are different from the elements of malicious prosecution of a civil claim, and the causes of action are different. *Compare Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 207 (Tex.1996) (stating the elements of malicious prosecution of a civil claim), *with Massey,* 652 S.W.2d at 934 (stating the elements of civil conspiracy). DISD's claims, as stated in its live petition, are broader than Finlan's characterization of the claims.

■ DISD placed evidence in the record in response to Finlan's motion. Finlan testified, by deposition, about the events leading to the entry of the "Agreed Order of Judgment Against Ed Grant" in the case in the 162nd District Court. Finlan first approached Grant about conceding judgment in the 162nd case sometime in the late summer of 1994. Finlan, Venable, and Grant met at a restaurant for lunch, and all three participated in the discussion. Finlan testified "[t]he discussion turned to whether or not he would supply us— whether or not Mr. Grant would tell the truth in this cause." Finlan could not remember exactly what happened after the restaurant meeting, but he believed there were phone calls back and forth. Finlan testified, "[a]t some point in·time, Mr. Grant announced that he wanted to sue his former attorneys, Mr. Eichelbaum and Mr. Schwartz." Grant may have said he wanted to sue his attorneys at the initial meeting at the restaurant. Finlan testified that he educated Grant about the lawsuits during their lunch meeting.

Finlan testified that he did not know whether Hinds prepared Grant's affidavit, which was part of Grant's answer. Hinds signed the certificate of service, which is at the bottom of the final page of the affidavit. Finlan also testified about another affidavit by Grant, which was file stamped October 20, 1994. Finlan interviewed Grant and prepared the affidavit based on the interview. Finlan believes he made one or more revisions that Grant suggested, and Grant ultimately executed the affidavit. Grant also provided Finlan with notes on the events of 1992. Further, Grant testified the amount of the agreed judgment, $300,000, was arrived at through negotiations between himself and Finlan.

In an affidavit attached to DISD's response to Finlan's motion for summary judgment, Ray Morrison testified he is the general counsel for the Texas Association of School Boards (TASB). On January 27, 1995, Venable called Morrison and asked "how he should make a claim against the property and casualty account" that DISD maintains with TASB. Morrison told Venable the TASB account could only be used to satisfy a judgment against DISD or a DISD official, but could not be used to pay attorney's fees or costs. Venable told Morrison that a ·DISD official had confessed judgment in favor of Venable. Venable asked Morrison how he could collect against the TASB account, and Morrison told him to contact DISD.

We conclude DISD's evidence raises fact questions concerning the alleged agreement among Finlan, Venable, and Grant to defraud DISD by obtaining consent judgments against DISD regardless of the merits of Finlan's and Venable's civil rights suit in the 162nd District Court and to collect the judgments from the TASB. Hence, Finlan failed to show that he is entitled to judgment as a matter of law. *See Nixon,* 690 S.W.2d at 548–49. Further, as stated above, Finlan's motion for summary judgment failed to meet DISD's case as pleaded. *See Cook,* 533 S.W.2d at 759; *Rogers,* 761 S.W.2d at 795. Accordingly, we reverse the trial court's summary judgment in favor of Finlan.

### ii. Summary Judgment for Grant

██ Grant's sole basis for summary judgment was his joinder in a motion for partial summary judgment filed by Finlan. However, Finlan filed an amended motion which superceded his earlier motion. We assume, without deciding, that Grant's joinder in Finlan's earlier motion was still a live pleading as to Grant.[5]

Finlan's motion, joined by Grant, attacked DISD's RICO claims. DISD, however, dismissed its RICO claims in its third amended original petition. Grant's affidavit provides in part:

1. "My name is Ed Grant. I am a resident of Dallas County, Texas, over 18 years of age, have never been convicted of a felony or any crime involving moral turpitude, competent to make this affidavit. The facts stated herein are true and correct and within my personal knowledge.

2. I have never engaged in any illegal or unprivileged act of fraud as defined by 18 USCA 1341 and 1343 nor have I ever committed personally or as a member of a conspiracy any illegal or unprivileged act which is indictable under Title 18, USC, that has cause [sic] or is in the process of causing any damage to the business or property of the Dallas Independent School District ("DISD").

3. I have never derived any income from any act which is indictable under Title 18, USC. I have never owned nor have I had any legal or beneficial interest in, directly or indirectly, any interest in [sic] any entity that engages or has engaged in or affects or affected interstate or foreign commerce. I have never operated or controlled, directly or indirectly, any entity that engages or has engaged in or affects or has affected interstate or foreign commerce. I have never operated or controlled, directly or indirectly, any entity that engages or has engaged in or affects or has affected interstate or foreign commerce.

4. I have not committed nor am I in the process of committing any illegal or unprivileged act, either on my own or in concert with any other person or persons, that has caused or is in the process of causing any legally cognizable damages to the DISD.

5. I have not damaged nor am I in the process of damaging the business or property of the DISD in any legally cognizable fashion by means of any illegal or unprivileged act, past or present, either on my own or in concert with any other person or persons.

Further affiant sayeth not."

We conclude that Grant's affidavit is insufficient to prove he is entitled to summary judgment because: (1) the affidavit is merely a composite of legal conclusions and opinions which are incompetent summary judgment evidence. *See Green v. Unauthorized Practice of Law Comm.*, 883 S.W.2d 293, 297 (Tex.App.-Dallas 1994, no writ); *see also Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984).(2) Grant's credibility is likely to be a dispositive factor in this litigation; therefore, summary judgment is not appropriate. *See Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989).(3) His statements that he did not conspire or agree to conspire are not readily controvertible and do not satisfy the requirements of procedural rule 166a. *See American Petrofina Co. of Tex. v. Crump Bus. Forms*, 597 S.W.2d 467, 471 (Tex.App.-Dallas 1980, writ ref'd n.r.e.). Accordingly, we reverse the trial court's summary judgment in favor of Grant.

### iii. Summary Judgment for Hinds

DISD filed its third amended original petition dismissing its RICO claims after

---

5. As stated previously, substituted or amended motion for summary judgment supercedes and supplants the previous motion, which may no longer be considered. *Frias*, 999 S.W.2d at 102; *Seventeen Thousand & No/100 Dollars U.S. Currency*, 809 S.W.2d at 639. The record does not affirmatively demonstrate that Grant joined either of Finlan's later two motions for summary judgment.

Hinds filed his motion for summary judgment. Accordingly, Hinds' third ground in support of his motion on RICO claims is moot. Although DISD amended its petition by filing a third amended original petition, it did not add any new causes of action and its allegations of civil conspiracy remained essentially unchanged. In the second ground of his summary judgment motion, Hinds maintains that DISD has not pled and cannot prove the elements of fraud to support a claim of conspiracy. Because we conclude the trial court properly granted summary judgment on Hinds' first ground for summary judgment, we need not address his second ground. *See* TEX.R.APP. P. 47.1.

### A. Hinds as Venable's and Grant's Attorney

■ In Hinds' first ground for summary judgment, he contends "an attorney's act of filing suit on behalf of clients cannot be the basis of a claim for damages." He asserts that he has not represented Grant as a defendant in the 162nd case and that DISD relies exclusively on his actions as attorney of record for Venable as plaintiff and for Grant as third-party plaintiff in the 162nd civil rights case to establish his participation in the alleged unlawful conspiracy; therefore, Hinds contends he is exempt from liability to a party other than his clients for the performance of his duties as an attorney. *See Martin v. Trevino*, 578 S.W.2d 763, 771 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.) (generally an attorney is exempt from liability to a party other than his client for damages because an attorney deals at arm's length with adverse parties and, therefore, he is not liable to them for his actions as an attorney on behalf of his client).

Hinds' summary judgment evidence included his affidavit that provides, in part:

2. I am the attorney of record for Don Venable in asserting his claims as Plaintiff in Cause No. 94–09418–I (162nd District Court, Dallas County), I am also attorney of record for Ed Grant solely in his capacity as Third–Party Plaintiff in the same proceeding in advancing a claim of malpractice against attorneys advocating the commission of civil rights violations by DISD. I am also attorney of record for Ed Grant in Cause No. 95–06824 (68th District Court, Dallas County) in which Mr. Grant has sued TASB and DISD, as administrator and insured, for damages arising from their refusal to provide him with independent counsel under its policy of insurance. In this capacity, I have personal knowledge of the facts and matters stated herein which I affirm to be true and correct.

3. I have no business or financial relationship with Don Venable, Ed Grant, or Rick Finlan, other than my agreement to represent Don Venable and Ed Grant in judicial proceedings as their attorney....

4. I never advised Ed Grant to confess a judgment in favor of Don Venable or Rick Finlan....

5. I did not participate in or advise Grant to sign an Agreed Order of Judgment which was subsequently filed in Cause No. 94–09418–I....

6. I have not made any effort nor have I participated in any effort to collect the "Agreed Order of Judgment" from the DISD Insurance Fund....

The evidence DISD placed in the record in response to Finlan's motion for summary judgment shows that Finlan, Venable, and Grant met together and held discussions related to the litigation. However, there is no evidence to show Hinds participated in those meetings or had knowledge of them.

DISD relies on *Kirby v. Cruce*, which holds that the attorney and client are liable to injured parties as co-conspirators where it can be inferred that (1) an attorney has knowledge of deception being practiced by a client, and (2) the lawyer participated in the scheme and intended to participate in sharing any ill-gotten gains. *Kirby v. Cruce*, 688 S.W.2d 161, 164 (Tex.

App.-Dallas 1985, writ ref'd n.r.e.). The attorney's acts in *Kirby*, however, did not involve judicial proceedings. Instead, the attorney knew both his own acts and his client's had the capacity to deceive and that their purpose was to obtain a secret profit from a real estate transaction through a joint venture. Here, Hinds has produced uncontroverted evidence that his sole involvement in the matter was his representation as attorney of record for Venable and Grant on diverse claims in a judicial proceeding. There is no evidence or allegation from which it can be inferred that any of Hinds' conduct occurred *outside* the normal course of an attorney's duties. Thus, we hold Hinds is exempt from liability to the adverse parties in the 162nd case. *See Martin*, 578 S.W.2d at 771–72.

DISD did not file a response to Hinds' motion for summary judgment. While the burden does not shift to the plaintiff to present evidence creating a fact issue until the defendant produces evidence entitling it to summary judgment as a matter of law, *Walker*, 924 S.W.2d at 377, we conclude the evidence Hinds has produced meets this standard. Thus, the burden shifted to DISD to expressly present to the trial court in written answer or response any reason for avoiding Hinds' entitlement to summary judgment. *See* Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex.1993); *City of Houston*, 589 S.W.2d at 677–79; *Spencer v. City of Dallas*, 819 S.W.2d 612, 616 (Tex.App.-Dallas 1991, no writ). Any issue not expressly presented to the trial court in a written motion or response may not be raised as grounds for reversal on appeal. *Green*, 883 S.W.2d at 300. Accordingly, we overrule DISD's sixth point of error as to Hinds.

## B. Special Exceptions

In its seventh point of error, DISD contends "[t]he trial court erroneously granted summary judgment rather than special exceptions, as, at most, only pleading deficiencies or 'ripeness' issues could have existed in the DISD's conspiracy claim." DISD's contention is directed solely at the Conspiracy Defendants' argument that DISD had not suffered cognizable damages; therefore, no conspiracy cause of action was viable.

We have concluded the trial court properly granted summary judgment for Hinds on the grounds that Hinds met his burden of proof that he did not participate in the alleged conspiracy. Because neither the trial court's judgment nor our judgment depends on the Conspiracy Defendants' contention that DISD's conspiracy claim was not ripe, we need not address DISD's seventh point of error. *See* Tex.R.App. P. 47.1.

## C. Discovery

In its eighth point of error, DISD contends "[t]he trial court erred by prohibiting necessary discovery and then granting summary judgment." DISD's one paragraph argument appears to be aimed at the trial court's refusal to grant DISD's motion for continuance to conduct further discovery.

The granting or denial of a motion for continuance is within the sound discretion of the trial court. *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex.1997); *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). Before the reviewing court will reverse the trial court's ruling, it should clearly appear from the record that the trial court has disregarded the party's rights. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex.1986). An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987). In a summary judgment context, it is generally not an abuse of discretion to deny a motion for continuance if the party has received the twenty-one days' notice required by rule

166a(c). *White*, 995 S.W.2d at 803; *McAllister v. Samuels*, 857 S.W.2d 768, 773 (Tex.App.-Houston [14th Dist.] 1993, no writ). In considering a continuance request, a trial court can presume that a plaintiff has investigated its case prior to filing. *White*, 995 S.W.2d at 804; *McAllister*, 857 S.W.2d at 773. Generally, a trial court is presumed to have correctly exercised its discretion when it denies a motion that does not comply with the rules governing continuances. *Villegas*, 711 S.W.2d at 626.

Texas Rules of Civil Procedure 251 through 254 govern continuances. Rule 251 provides that a continuance shall not be granted except for sufficient cause supported by affidavit. Tex.R. Civ. P. 251. Rule 252 provides that if a motion for continuance is sought because of a want of testimony, the applicant shall file an affidavit stating that it has used diligence to procure the testimony, and the applicant's diligent efforts shall be stated in the affidavit. Tex.R. Civ. P. 252.

■ In this case, DISD filed a motion in the trial court asserting it needed to take the depositions of Grant, Hinds, and Venable, and complete the deposition of Finlan. The motion recites that the trial court stayed discovery in the case. The motion includes a verification by DISD's trial counsel that the facts stated in the motion are true. The motion, however, does not state or explain that DISD used diligence in obtaining discovery.

DISD's response to Finlan's motion for summary judgment included excerpts from both Finlan's and Grant's depositions. The excerpts from Grant's deposition show he was deposed on at least two separate days. Finlan's deposition was 161 pages in length. DISD's contention on appeal that "[n]o discovery was allowed" is not consistent with the record. Hinds' response to DISD's motion for continuance included Hinds' affidavit which averred the trial court required Finlan, Venable, Hinds, and Grant to submit to depositions by DISD in January 1996. Hinds further averred that

he, Finlan, Venable, and Grant, agreed to dates chosen by DISD for depositions. He also averred DISD began deposing Finlan and canceled the remaining depositions.

DISD did not aver that it used diligence in seeking depositions, nor did it show that "no discovery was allowed." To the contrary, the record reflects DISD was given an opportunity to conduct its discovery. After thoroughly reviewing the record, we cannot conclude that the trial court clearly abused its discretion. *See Simon*, 739 S.W.2d at 795; *White*, 995 S.W.2d at 803; *Ramirez*, 973 S.W.2d at 388; *McAllister*, 857 S.W.2d at 773. Accordingly, we overrule DISD's eighth point of error as applied to Hinds.

## D. Summary Judgment Evidence

■ DISD contends the trial court erred in considering the summary judgment evidence submitted by Finlan, Hinds, and Grant. Because we have sustained DISD's sixth point of error as applied to Finlan and Grant, we only address DISD's contention as it applies to Hinds.

DISD states it lodged objections to the summary judgment evidence of the alleged conspirators, but only generally cites us to 141 pages in the record. It does not provide a single citation to any specific objection. Moreover, DISD contends:

The only conceivable evidence upon which the movants could have relied in obtaining summary judgment; [sic] that is, testimony that "there is no conspiracy," or that "I didn't do anything wrong, or illegal," etc. . . .

DISD's quotes appear to be directed at Finlan's and Grant's affidavits. As we have noted above, Finlan amended his motion for summary judgment, and his live pleading was not premised on his previously filed affidavit. Also as noted above, we agree with DISD that Grant's affidavit was conclusory and could not support summary judgment. However, DISD's characterization is not accurate as it applies to Hinds'

summary judgment evidence, which we have discussed in detail.

■ DISD has made no effort to cite this Court to any specific complaint about Hinds' summary judgment evidence, and its generic characterizations are inaccurate. The argument in a brief must contain a clear argument for the contentions made, with appropriate citations to the record and to authorities. Tex.R.App. P. 38.1(h); *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex.App.-Houston [14th Dist.] 1999, no pet.). An appellate court has no duty to search a voluminous record without guidance from the appellant to determine whether an assertion of reversible error is valid. *Melendez*, 998 S.W.2d at 280. Even if we considered DISD's generic reference to 141 pages of record as sufficient guidance, DISD, nevertheless, failed to support its position with clear argument. Accordingly, DISD has waived this contention as applied to Hinds. *See* Tex.R.App. P. 38.1(h).

In the interest of justice, we have reviewed the 141 pages of the Clerk's Record to which DISD refers. Pages 1458–1512 contain objections to the affidavits of Finlan and Grant. Pages 2092–2117 contain objections to Grant's affidavit, which was submitted by Finlan. Pages 2118–2122 and 2996–3002 contain objections to "the tape of DISD's Executive Session." Pages 3014–3066 contain additional objections to Finlan's and Grant's affidavits. Having reviewed DISD's citations to the record, we find no citation which supports its argument as applied to Hinds. *See* Tex. R.App. P. 38.1(h); *Melendez*, 998 S.W.2d at 280. DISD's contention is without merit. Accordingly, we overrule DISD's ninth point of error as applied to Hinds.

Because we have overruled each of DISD's contentions that summary judgment was improperly granted to Hinds on the civil conspiracy claim, we affirm the trial court's summary judgment in Hinds' favor on DISD's civil conspiracy claims.

## HINDS', FINLAN'S, and GRANT'S CROSS–APPEALS ON DEFAMATION CLAIMS AGAINST LAWRENCE FRIEDMAN, ALAN RICH, AND FRIEDMAN & ASSOCIATES, P.C.

Hinds, Finlan, and Grant contend summary judgment should not have been granted on their defamation claims in favor of Lawrence Friedman, Alan Rich, and Friedman & Associates, P.C. (collectively "Friedman & Associates"). Hinds presents four issues contending summary judgment should not have been granted on his defamation claims because (1) Friedman's affidavit was insufficient to do more than raise a fact issue, (2) Hinds did not have an opportunity for discovery on Friedman & Associates' affirmative defenses, (3) the summary judgment evidence raised material fact issues precluding summary judgment, and (4) the trial court erred by failing to grant Hinds' motion for new trial on the basis of new evidence.

■ Finlan's fifth point of error contends Friedman & Associates were not entitled to governmental immunity because they are private attorneys. Finlan's seventh point of error contends Friedman & Associates did not establish their communications were privileged as a matter of law. Grant, acting pro se, adopts the issues raised by Hinds and Finlan regarding the defamation claims.[6] The controlling issue is whether Friedman & Associates' statements were privileged as a matter of law.

### 1. Background

On September 13, 1995, Friedman & Associates filed the DISD Parties' first amended petition in the case at bar against Finlan, Venable, Hinds and Grant alleging

---

6. The adoption of points of error in multiparty appeals "should be encouraged to conserve words, paper, and the eyesight of the members of the judiciary." *City of San Antonio v.* *Bynum*, 933 S.W.2d 651, 652 (Tex.App.-San Antonio 1996, no writ) (quoting *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 666 (Tex.App.-Texarkana 1991, writ denied)).

they had committed mail fraud, wire fraud, civil violation of RICO,[7] and civil conspiracy.[8] On the same day, Friedman issued a news release to area news media. Hinds, Venable, Finlan, and Grant responded to the press release by suing Friedman & Associates for defamation. Friedman & Associates moved for summary judgment asserting two grounds: (1) absolute judicial proceedings privilege, and (2) sovereign immunity. The trial court granted Friedman & Associates' motion for summary judgment.

## 2. Applicable Law

■ The elements of libel are defined by the civil practice and remedies code, which provides:

> A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997). A statement which falsely charges a person with the commission of a crime is considered to be libelous *per se*. *Christy v. Stauffer Publications*, 437 S.W.2d 814, 815 (Tex.1969); *Hill v. Herald–Post Publ'g Co.*, 877 S.W.2d 774, 781 (Tex.App.-El Paso 1994), *rev'd in part on other grounds*, 891 S.W.2d 638 (Tex.1994).

■ Communications and publications made in the due course of a judicial proceeding will not serve as the basis of a defamation action. *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 110–111, 166 S.W.2d 909, 912 (1942); *Hill*, 877 S.W.2d at 782. The immunity is absolute even if the statement is false and uttered or published with express malice. *Reagan*, 166 S.W.2d at 912; *Hill*, 877 S.W.2d at 782. The privilege extends to statements made by the judge, jurors, counsel, parties, or witnesses and attaches to all aspects of the proceedings. *James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982); *Hill*, 877 S.W.2d at 782. The privilege also applies to out-of-court communications if the communication bears some relationship to the proceeding and is in furtherance of the attorney's representation. *Hill*, 877 S.W.2d at 782 (citing *Russell v. Clark*, 620 S.W.2d 865, 870 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.)).

■ This Court's opinion in *Russell v. Clark*, 620 S.W.2d 865 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.), provides the proper guidelines for determining when a lawyer's out-of-court communication is absolutely privileged. There, we held:

> Public policy demands that attorneys be granted the utmost freedom in their efforts to represent their clients. To grant immunity short of absolute privilege to communications relating to pending or proposed litigation, and thus subject an attorney to liability for defamation, might tend to lessen an attorney's efforts on behalf of [his or her] client. The conduct of litigation requires more than in-court procedures. An attorney must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence; thus, he must not be hobbled by the fear of reprisal by actions for defamation. Yet this absolute privilege must not be extended to an attorney carte blanche. The act to which the privilege applies must bear some relationship to the judicial proceeding in which the attorney is em-

---

7. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1961, et seq. (West 1984 & Supp.1999).

8. On April 17, 1996, DISD filed its third amended petition, which did not include the racketeering, mail fraud, or wire fraud allegations.

ployed, and must be in furtherance of that representation.

*Id.* at 868. Whether a lawyer's out-of-court statement is related to a proposed or existing judicial proceeding is a question of law to be determined by the court. *Id.* at 870. When deciding the issue, "the court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding." *Id.* All doubt should be resolved in favor of the relevancy of the statement. *Id.* The mere delivery of pleadings in pending litigation to members of the news media does not amount to a publication outside of the judicial proceedings, resulting in the waiver of the absolute privilege. *Hill,* 877 S.W.2d at 783.

### 3. Application of Law to Facts

 Friedman & Associates' out-of-court press release stated as follows:

September 13, 1995

For Immediate Release
Attention News Director

The Dallas Independent School District filed suit today in Dallas District Court against Richard Finlan, Don Venable, Ed Grant, who is a former member of the DISD Board of Trustees, and Ronald Hinds, who is the attorney for Don Venable and Ed Grant, for Fraud, Civil Conspiracy, and Racketeering. The DISD has been patiently dealing with Venable, Finlan, and Grant within the confines of the courtroom in suits initiated by them; however, the time has come to expose to the public what these men are truly trying to accomplish.

These men are not serving as "self-appointed government watchdogs." As has been publicly released, Venable and Finlan are seeking a $1,650,000 settlement from DISD. They are only out for their own personal gain seeking to create a financial windfall for themselves by harassing the DISD with the filing of frivolous lawsuits and seeking the pri-

vate bank records of the members of the DISD Board of Trustees. The lawsuit seeks actual and punitive damages of $1,500,000.

The DISD's attorney, Lawrence J. Friedman, will be available for comments today.

We agree with the El Paso Court of Appeals that the mere delivery of pleadings in pending litigation to members of the news media does not amount to a publication outside of the judicial proceedings, resulting in the waiver of the absolute privilege. *Hill,* 877 S.W.2d at 783. The harm resulting to a defamed party from delivery of pleadings in a lawsuit to the news media could demonstratively be no greater than if the news media found the pleadings on their own. *Id.* Likewise, we conclude that advising the media that a lawsuit has been filed, including a basic description of the allegations, has no practical effect different from providing the pleadings to the media.

Here, the first amended petition itself and the statements in the press release which relate the allegations in that petition are absolutely privileged pursuant to the judicial proceeding privilege. *Id.* at 782. The statement that "the DISD has been patiently dealing with [the defendants] within the confines of the courtroom in suits initiated by them; . . ." relates to pending litigation among the same parties. Likewise, the second paragraph above relates to pending litigation and settlement efforts.

We recognize the issues raised in this lawsuit, and issues concerning DISD in general, have played a prominent role in the local news media. Nevertheless, we are mindful that we must resolve all doubt in favor of the relevance of the lawyer's statement. *Russell,* 620 S.W.2d at 870. Further, we must extend the privilege to any statement that bears some relation to a judicial proceeding. *Id.* Under the facts of this case, we hold that the press release had some relation to this lawsuit in partic-

ular and to other litigation between the same parties. Therefore, the statements were privileged and cannot serve as the basis of a defamation action. *Reagan*, 166 S.W.2d at 912; *Hill*, 877 S.W.2d at 782, *Russell*, 620 S.W.2d at 868.

We overrule Hinds' first, second, and third points of error and Finlan's seventh point of error because the press release was permissible as a matter of law under the judicial proceedings privilege. We overrule Grant's points of error adopting Hinds' first, second, and third points of error and Finlan's seventh point of error.

### 4. Hinds' Motion for New Trial

In Hinds' fourth point of error, he contends he should have received a new trial because of newly discovered evidence. In litigation between some of the same parties, this Court has previously stated the standard a party must meet when seeking a new trial on the basis of newly discovered evidence.

A party seeking a new trial on the ground of newly discovered evidence must show the trial court that: (1) the evidence has come to his knowledge since the trial; (2) it was not owing to the want of due diligence that it did not come sooner; (3) it is not cumulative; and (4) it is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983). Whether to grant such a motion is within the sound discretion of the trial court, and the trial court's action will not be disturbed on appeal absent an abuse of such discretion. *Id.* In considering the motion, the trial court considers the weight and the importance of the new evidence and its bearing in connection with the evidence received at trial. *Id.* "The inquiry [is] not whether, upon the evidence in the record, it apparently might have been proper to grant the application in the particular case, but whether the refusal of it has involved the violation of a clear legal right or a manifest abuse of judicial discretion." *Id.* Every reasonable presumption will be made on review in favor of orders of the trial court refusing new trials. *Id.* *Keever v. Finlan*, 988 S.W.2d 300, 315 (Tex.App.-Dallas 1999, pet. dism'd).

Hinds relies on William Keever's testimony. Keever was serving as DISD Board President at that time. Keever testified he (1) never authorized a press release at DISD and (2) did not know whether the DISD board had authorized Friedman to issue a press release concerning the lawsuit. Assuming, without deciding, Hinds meets the first three *Jackson* factors for a new trial, we focus our analysis on the fourth factor, which is dispositive. The fourth *Jackson* factor requires Hinds to show the new evidence is so material that it would probably produce a different result if a new trial were granted. The facts are undisputed that Friedman & Associates had authority to file suit on behalf of DISD. Because we have already determined the press release bore some relation to judicial proceedings, the trial court did not abuse its discretion by its presumed finding that the testimony by Keever was immaterial on the issue of whether the press release was absolutely privileged. *See Jackson*, 660 S.W.2d at 809; *Keever*, 988 S.W.2d at 315. We overrule Hinds' fourth point of error. We also overrule this point of error as adopted by Grant.

We need not address Finlan's fifth point of error (no governmental immunity) as applied to the defamation claims or Grant's point of error adopting Finlan's fifth point of error, because we have based our ruling on Friedman & Associates' alternative ground. Tex.R.App. P. 47.1; *Holloway*, 840 S.W.2d at 18.

### RICHARD FINLAN'S CROSS-APPEAL ON HIS CIVIL RIGHTS CLAIMS

Finlan's cross-points of error one, two, three, four, five, six, and eight concern his

civil rights claims. Finlan contends DISD violated his civil rights by filing suit against him in retaliation for publicly criticizing DISD. For the reasons below, we affirm the trial court's grant of summary judgment in favor of all DISD Parties except DISD itself. As to DISD, we reverse and remand.

## 1. Background

On September 1, 1995, Finlan and Venable sent a letter to Chad Woolery asking for all of the DISD Trustees' campaign finance reports and all of the backup documents to the campaign finance reports. On September 6, 1995, Chad Woolery and all of the DISD Trustees, except for Kathleen Leos, filed a declaratory judgment action against Finlan and Venable seeking a declaration that the backup documents did not have to be given to Finlan and Venable. On September 11, 1995, they non-suited their declaratory judgment action given a change in the law prohibiting suits against a person requesting public information. This statute became effective September 1, 1995—five days before the declaratory judgment suit was filed.

However, that same day, on September 11, 1995, Finlan filed a counterclaim alleging DISD, Woolery, the DISD Trustees, except Leos, and the DISD attorneys conspired to violate his civil rights under section 1983 because the declaratory judgment action was a retaliatory suit brought solely because he wrote the September letter asking for what he thought were public documents. On September 13, 1995, the DISD Parties filed their first amended petition, described above, alleging in part that Finlan, Venable, Grant, and Hinds had conspired to defraud DISD and its taxpayers.

On November 8, 1995, Finlan filed an amended counterclaim alleging as before that the DISD Trustees, excluding Leos, and DISD Attorneys had violated his civil rights under section 1983 by filing the original declaratory judgment claims. In

addition, Finlan's amended counterclaim also alleged that the DISD Trustees, including Leos, and the DISD Attorneys had further violated his civil rights under section 1983 by retaliating against Finlan for exercising his right to petition against DISD in the civil rights suit filed in the 162nd District Court and by attempting to "drive him from the courthouse" by filing the civil conspiracy claims.

All DISD Parties, except DISD itself, filed motions for summary judgment claiming they were immune from suit under the *Harlow*[9] doctrine of qualified immunity. DISD claimed it was not a "person" under section 1983 because it was an arm of the state, and, therefore, it was entitled to immunity based on the Eleventh Amendment to the United States Constitution. The DISD Attorneys also moved for summary judgment on the merits of Finlan's section 1983 claims.

## 2. Applicable Law and Application of Law to Facts

### a. DISD's Contentions

Finlan's eighth cross-point of error contends the trial court erred in dismissing his civil rights suit against DISD on the basis of the sovereign immunity afforded the individual states under the Eleventh Amendment to the federal constitution. DISD concedes this point of error citing *San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 280 (Tex. 1996), which was decided several months after the trial court granted summary judgment on this immunity defense.

In DISD's motion for summary judgment, it argued "[b]ecause the DISD is an agency of the state, and because agencies of the state are not 'persons' under Section 1983, the Court must grant summary judgment in favor of the DISD on the Cross-Plaintiffs' Section 1983 claims." DISD relied on *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105

---

9. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

L.Ed.2d 45(1989), which holds States are not persons under section 1983 civil rights claims. However, Congress intended for municipalities and other local government units to be considered persons under section 1983 and, therefore, subject to suit. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[10]

Our supreme court has now held, "... an independent school district is more like a county or city than it is like an arm of the State of Texas...." *San Antonio Indep. Sch. Dist.*, 936 S.W.2d at 284. Because DISD is not considered an arm of the State for Eleventh Amendment purposes, DISD's argument that it is not a person under section 1983 fails. *See Monell*, 436 U.S. at 690, 98 S.Ct. 2018. For these reasons, we sustain Finlan's eighth cross-point of error.

As Finlan contends in his motion for rehearing, DISD did not assert any other grounds for summary judgment. Accordingly, we reverse and remand Finlan's civil rights claim against DISD for further proceedings.

### b. Qualified Immunity Analysis

■ Government officials performing discretionary functions are entitled to the defense of qualified immunity, which shields them from liability for civil damages, if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ To be entitled to qualified immunity, a public official must demonstrate that he was "acting in his official capacity and within the scope of his discretionary authority." *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. Unit A 1981). Discretionary authority exists when the law does

not specify the precise action that the official must take. *Davis v. Scherer*, 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *see also Jolly v. Klein*, 923 F.Supp. 931, 948 (S.D.Tex.1996) ("An act is discretionary under Texas law if it requires personal deliberation, decision, and judgment.").

The DISD officials' decision to allow the filing of the claims of which Finlan complains was a wholly discretionary act taken within their official authority. When faced with a request for backup documents to their campaign finance reports, the DISD Trustees' action in filing a declaratory judgment action was taken solely as a result of and wholly related to their status as DISD officials. A public official is frequently the subject of impending litigation, and the hands of the official are not tied; attorneys may be employed to respond in whatever manner is appropriate. *See Stewart v. Newton Indep. Sch. Dist.*, 134 S.W.2d 429, 431 (Tex.Civ.App.-Beaumont 1939, no writ) ("School district trustees have the general power to employ an attorney to represent them in legal proceedings respecting school affairs and to pay such attorney reasonable compensation for his services out of the special maintenance funds of the district."). The DISD Trustees' claims were not "personal suits," as Finlan erroneously calls them, but claims made as elected members of the DISD Board of Trustees in response to a request for backup documents kept in connection with campaign finance reports. School board trustees have broad authority to expend funds to defend and initiate lawsuits in matters relating to their office and to district management. *See* Tex. Educ. Code Ann. § 11.151 (Vernon 1996) § 45.105 (Vernon Supp.2000); *see also Stewart*, 134 S.W.2d at 431. The DISD officials acted within their discretionary authority in approving the filing of the lawsuits.

---

**10.** The *Will* case discussed *Monell* with approval. *Will*, 491 U.S. at 70–71, 109 S.Ct. 2304.

In deciding a motion for summary judgment that raises the affirmative defense of qualified immunity, the court must utilize a sequential two-step inquiry. *Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). First, a court must decide the "purely legal question" of "whether the conduct of which the plaintiff complains violated clearly established law" at the time of the defendant's actions. *Id.* at 232–33, 111 S.Ct. 1789 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). This "narrow threshold question ... is always a matter of law for the court, [and] hence is always capable of decision at the summary judgment stage." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir.1992); *see also Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). If the law was not clearly established, then summary judgment is proper without an inquiry into reasonableness because an official could not reasonably be expected to know that the law forbade his conduct. *Harlow*, 457 U.S. at 818. But if the law was clearly established, the court must then determine the second inquiry of whether the defendant's conduct was objectively reasonable—an inquiry that "may or may not be ... subject to determination as a matter of law." *Pritchett*, 973 F.2d at 313.

The United States Court of Appeals for the Fifth Circuit follows this sequential two-step approach, first asking whether the plaintiff has alleged the violation of a clearly established constitutional right and, if so, then asking whether the defendant's conduct was nevertheless objectively reasonable. *See, e.g., Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997). A constitutional right is "clearly established" when its contours are sufficiently clear that a reasonable public official would understand what he or she is doing violates the right. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir.1994).

If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir.1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994)). Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429.

In his first and second cross-points, respectively, Finlan maintains the trial court erroneously applied federal summary judgment standards and granted the summary judgments at issue on special exceptions. We disagree. First, whether to allow special exceptions is procedural, and state courts follow state procedure. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 n. 1 (Tex.1998). Second, the movants moved for summary judgment based on qualified immunity supported by summary judgment affidavits. The trial court applied substantive federal immunity law. *See Barstow v. State*, 742 S.W.2d 495, 501 n. 2 (Tex.App.-Austin 1987, writ denied) (state courts are required to follow federal substantive law).

Finlan also argues that, rather than granting summary judgment dismissing his claims, the trial court should have deemed the summary judgment motions to have been special exceptions and allowed Finlan an opportunity to replead. He interprets the rulings on the inadequacy of his pleadings as a failure to state a cause of action to which he has a right to replead before dismissal. He is in error in this instance, because the initial issue of qualified immunity may always be determined at the summary judgment stage. *Pritchett*, 973 F.2d at 313.

Turning to the threshold inquiry regarding the qualified immunity defense,

the legal right at issue in this case is Finlan's right not to be subjected to a civil suit for allegedly exercising his free speech rights and for invoking his right to access the courts. Thus, the legal question is whether the law was clearly established in 1995 that the filing of a civil suit, alleged to be malicious and retaliatory, would violate an individual's First Amendment rights to free speech and access to the courts.

The Fifth Circuit has ruled that there is no clearly established right to claim a First Amendment violation from the filing of a civil lawsuit, even one alleged to be malicious prosecution, in retaliation for the exercise of free speech rights. In *Johnson v. Louisiana Department of Agriculture,* 18 F.3d 318 (5th Cir.1994), the operator of a defunct crop-dusting business brought a section 1983 action against the Louisiana Department of Agriculture and its commissioner, contending that they had violated his First Amendment rights by bringing a series of administrative proceedings against him and his business. The trial court held that these allegations failed to state a claim under section 1983 for violation of the plaintiff's First Amendment rights, and the Fifth Circuit affirmed. *Id.* at 321.

The court first noted that if plaintiff's allegations asserted a claim on any basis, "the claim is one for malicious prosecution in violation of Johnson's First Amendment rights." *Id.* at 320. The *Johnson* court then observed that "[w]hether the Constitution comprehends any such claim *is far from clear.*" *Id.* (emphasis added.) Accordingly, we hold that in 1995 there was no clearly established law that the filing of a civil suit in retaliation violated an individual's free speech rights.

The Fifth Circuit has also recognized that it is well established that access to the courts is protected by the First Amendment right to petition for redress of grievances. *Ryland v. Shapiro,* 708 F.2d 967, 971–72 (5th Cir.1983); *Wilson v. Thompson,* 593 F.2d 1375, 1387 (5th Cir.1979). The right of access to the courts is impli-

cated "where the ability to file suit was delayed, or blocked altogether." *Foster,* 28 F.3d at 430.

Finlan has not alleged, much less established, his ability to file suit was in any way delayed or blocked altogether. Rather, he has been a frequent party to litigation against DISD Trustees. *See, e.g., Keever v. Finlan,* 988 S.W.2d 300 (Tex. App.-Dallas 1999, pet. dism'd); *Venable v. Keever,* 960 F.Supp. 110 (N.D.Tex.1997). The government's filing of a civil lawsuit against an individual in no way stands as an "official impediment" to that individual's "facilitative right to institute a suit." *Hale v. Townley,* 45 F.3d 914, 920 (5th Cir.1995). Thus, we hold that Finlan's constitutional right to access to the courts was not violated under our facts. We hold that the trial court properly granted Woolery and the Dallas Trustees' motion for summary judgment asserting the defense of qualified immunity.

The DISD Attorneys contend they are also entitled to qualified immunity because, even though they are private attorneys, they were specially employed to represent a governmental entity. We need not address this issue, because the DISD Attorneys also filed a motion for summary judgment on the merits. We have held the filing of the civil case was not a constitutional violation; therefore, if Woolery and the DISD Trustees are not liable to Finlan, it necessarily follows that their attorneys cannot be liable under section 1983 for the same conduct.

We overrule Finlan's cross-points one, two, three, and four; we do not reach his cross-point five (attorney not entitled to governmental immunity); and we hold that he has waived his cross-point six (original suit was illegal under Texas law) by not raising this issue in the trial court in his response to the DISD Parties' motions for summary judgment based on the qualified immunity doctrine. *See Lee v. Braeburn Valley West Civic Ass'n,* 786 S.W.2d 262, 263 (Tex.1990).

## CONCLUSION

The backup documents comprising the record of information to support campaign finance reports are not subject to release to the public under the Texas Election Code. We reverse the trial court's judgment with regard to the backup documents and render judgment that Finlan is not entitled to backup records of DISD Trustees.

We reverse the trial court's grant of summary judgment against DISD on its civil conspiracy claim against Finlan and Grant, and remand for further proceedings.

We affirm the trial court's judgment dismissing DISD's civil conspiracy claim against Hinds.

We affirm the trial court's judgment against Hinds', Finlan's, and Grant's defamation claims, because Friedman & Associates' statements were absolutely privileged under the judicial proceedings privilege.

We reverse the trial court's judgment granting DISD's motion for summary judgment on Finlan's civil rights claims and remand for further proceedings because the basis for DISD's motion for summary judgment does not have merit.

We affirm the grant of summary judgment against Finlan on his civil rights claims as to the DISD Parties, other than DISD and the DISD Attorneys, because the filing of the civil case at issue was not a constitutional violation.

We affirm the trial court's grant of summary judgment to the DISD Attorneys on the merits of Finlan's civil rights claims, because the other individuals included in the DISD Parties are not liable, and, therefore, their attorneys cannot be liable for the same conduct.