NUMBER13-04-256-CV

 

                                 COURT
OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

 

 

ROBERT C. COLEMAN,                                                                   Appellant,

 

                                                             v.

 

DANNY
ALLEN CONWAY AND THE CITY 

OF KINGSVILLE POLICE DEPARTMENT,                                     Appellees.

 

 

 

                             On
appeal from the 105th District Court

                                        of
Kleberg County, Texas.

 

 

 

                              MEMORANDUM
OPINION[1]

 

                       Before
Justices Rodriguez, Castillo and Garza








Memorandum Opinion by Justice
Castillo 

 

This is a personal injury suit in which Robert C.
Coleman filed suit against Danny Allen Conway and the City of Kingsville Police
Department.  Conway, an officer with the
City of Kingsville ("the City"), collided with Coleman's vehicle
while operating a police vehicle.  In his
petition, Coleman alleged negligence, negligence per se, and negligence under
the Texas Tort Claims Act.[2]  Conway and the City responded with various
immunity claims.  The trial court granted
summary judgment in favor of Conway and the City, and it is from that judgment
that Coleman appeals.  We affirm. 

I. 
Proceedings Below








In this case, Coleman filed his original petition on
August 27, 2003, alleging negligence, negligence per se, and negligence under
the Texas Tort Claims Act.  Conway filed
his original answer on September 15, 2003, denying the allegations against
him.  Conway alleged that Coleman was
guilty of negligence, pleaded immunity from Coleman's claims, and invoked the
protections of the Texas Tort Claims Act.

On February 11, 2004, Conway and the City filed a
motion for summary judgment based on official and sovereign immunity.  The City filed its answer on February 12,
2004, which (1) denied Coleman's allegations, (2) alleged that Coleman was himself
guilty of negligence, and (3) asserted the affirmative defense of sovereign
immunity and/or the protections of the Texas Tort Claims Act.  Coleman filed a motion for continuance on
April 15, 2004, along with a motion to strike the evidence attached to Conway
and the City's motion for summary judgment. 
That same day, Coleman filed his response to Conway and the City's
motion for summary judgment subject to his motion for continuance.  On April 22, 2004, Conway and the City filed
a response to Coleman's motion for continuance, a motion to strike evidence,
and their objections and reply to Coleman's response to their motion for
summary judgment.

The trial court, by an order dated April 22, 2004,
(1) denied Coleman's motion for continuance, (2) denied Coleman's motion to
strike Conway and the City's evidence, and (3) granted Conway and the City's
motion for summary judgment.  

II.  Issues on
Appeal








By three issues on appeal Coleman contends the trial
court abused its discretion by (1) failing to grant his motion for continuance,
(2) sustaining Conway and the City's objections to his summary judgment proof,
and (3) granting summary judgment against him. 


III. 
Coleman's Motion for Continuance

Coleman filed a motion for continuance contemporaneously
with his motion to 








strike the evidence and his response to the motion
for summary judgment.  In his motion for
continuance, Coleman moved that the hearing on Conway and the City's motion for
summary judgment be continued until Coleman had the opportunity to (1) take the
deposition of Conway, (2) receive the deposition transcript, and (3)  incorporate it into Coleman's response to the
motion for summary judgment.  Coleman
also asked for "costs of court, attorney's fees, and for any other such
further relief to which [Coleman] show[ed] himself justly entitled to
receive."  Coleman attached the
following to his verified motion for continuance: (1) a letter dated April 2,
2004, addressed to Thomas A. Silver, attorney for Conway;[3]
(2) a fax transmission print out;[4]
(3) a letter, also dated April 2, 2004, addressed to the City of Kingsville,
specifically to the records department;[5]
(4) a copy of a check written in the amount of six dollars, payable to the City
of Kingsville and drawn on the account of Cassidy and Raub PLLC; (5) a letter
dated April 8, 2004, addressed to the City of Kingsville, specifically to the
records department;[6]
and (6) a receipt on City of Kingsville letterhead for payment of six dollars
indicating the amount paid by Cassidy and Raub PLLC.  

In their response to Coleman's motion for
continuance,[7]
filed April 22, 2004, Conway and the City maintain that Coleman's inability to
take the deposition of Conway directly resulted from the short amount of notice
provided by Coleman.  Conway and the City
allege that Coleman gave unsatisfactory notice because, although Coleman filed
suit the preceding August, the first request to depose came less than two weeks
before the due date for Coleman's response to the motion for summary
judgment.  








The trial court denied Coleman's motion for
continuance by an order dated April 22, 2004.[8]  On appeal, Coleman asserts that the trial
court abused its discretion by failing to grant his motion for
continuance.  Coleman points out that (1)
at the time of the summary judgment, Conway's answer had only been on file for
about seven months, the City's answer had only been on file for about two
months, and the lawsuit had only been on file for about eight months; (2)
Coleman relied on opposing counsel regarding the taking of Conway's deposition;
(3) the motion was the first motion for continuance filed; (4) the motion
stated sufficient good cause, and was in substantial compliance with the
continuance rule; and (5) the motion was verified and uncontroverted.  Coleman asserts these points show diligence
on his part.

A.  Standard
of Review








The determination of a request for continuance of a
summary judgment hearing is within the discretion of the trial court and will
not be overturned unless a clear abuse of discretion is shown.  Cocke v. Meridian Sav. Ass'n., 778
S.W.2d 516, 518 (Tex. App.BCorpus Christi 1989, no pet.) (citing Schero v.
Astra Bar, Inc., 596 S.W.2d 613, 615 (Tex. Civ. App.BCorpus Christi 1980, no writ)).  An abuse of discretion exists when the
court's decision is arbitrary or unreasonable. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex.
1985).  In the summary judgment context,
it is generally not an abuse of discretion to deny a motion for continuance if
the party moving for continuance has received the twenty‑one days' notice
required by rule 166a(c) of the Texas Rules of Civil Procedure.  Clemons v. Citizens Med. Ctr., 54
S.W.3d 463, 469 (Tex. App.BCorpus Christi 2001, no pet.) (citing Dallas
Indep. Sch. Dist. v. Finlan, 27 S.W.3d 220, 234‑35 (Tex. App.BDallas 2000, pet. denied)).  Factors considered when determining whether a
trial court has abused its discretion by denying a motion for continuance of a
summary judgment hearing include (1) the length of time the case was on file,
(2) the materiality of the discovery sought, and (3) whether due diligence was
used in obtaining discovery. Citizens Med. Ctr., 54 S.W.3d at 469
(citing Holguin v. Ysleta Del Sur Pueblo, 954 S.W.2d 843, 854 (Tex. App.BEl Paso 1997, writ denied)).  

B.  Analysis

Rule 166a(b) states that a defending party may move
for summary judgment at any time and does not require a movant to allow an
adequate time for discovery.  See
Tex. R. App. P. 166a(b).  When a
party contends that it has not had adequate opportunity for discovery before a
summary judgment hearing, it must file either an affidavit explaining the need
for further discovery or a verified motion for continuance.  See Tex.
R. Civ. P. 166a(g); Tenneco,
Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 647 (Tex. 1996).  When considering a continuance request, a
trial court can presume that a plaintiff has investigated its case prior to
filing the petition.  Citizens Med.
Ctr., 54 S.W.3d at 469; Finlan, 27 S.W.3d at 235; White v.
Mellon Mortgage Co., 995 S.W.2d 795, 804 (Tex. App.BTyler 1999, no writ).








We examine the record with regard to (1) the length
of time the case has been on file, (2) the materiality and purpose of the
discovery sought, and (3) whether the party seeking the continuance has
exercised due diligence to obtain the discovery sought.  See Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 161 (Tex. 2004); Clemons v. Citizens Med. Ctr, 54 S.W.3d
at 469.  We first consider the length of
time the case was on file.  See id.
 Coleman filed his lawsuit on August
27, 2003.  On February 12, 2004, Conway
and the City filed their motion for summary judgment.  By an order dated April 22, 2004, the trial
court denied Coleman's motion for continuance and granted Conway and the City's
motion for summary judgment.  Almost
eight months passed between the filing of the lawsuit and the date Coleman's
motion for continuance was denied and Conway and the City's motion for summary
judgment was granted.[9]  More than the requisite twenty-one days
passed between the date Conway and the City filed their motion for summary
judgment and the date the summary judgment was entered against Coleman.  See Tex.
R. Civ. P. 166a(c).  

Second, we consider the materiality of the discovery
sought.  See Citizens Med. Ctr.,
54 S.W.3d at 469.  Coleman sought the deposition
of Conway, the officer whose actions are the basis of this lawsuit.  We conclude that the discovery sought was
material to the case.  

Finally, we determine whether Coleman used due
diligence in obtaining discovery.  See
id.  Coleman alleges that his
diligence is evident as he (1) requested Conway's deposition at least two weeks
prior to his response date for Conway and the City's summary judgment motion;
and (2) conducted written discovery, which was delayed by his agreeing to
Conway's request for an extension of time to respond to discovery
requests.  








While the materiality of the evidence Coleman sought
the continuance to obtain is evident, after considering the length of time the
case was on file, and Coleman's level of diligence in obtaining the deposition
of Conway, we cannot conclude that the trial court abused its discretion in
denying the motion for continuance.  We
overrule Coleman's first issue on appeal.

IV. 
Objections to Coleman's Summary Judgment Proof

Coleman's response to Conway and the City's motion
for summary judgment included (1) Coleman's affidavit, (2) copies of
photographs of Coleman's vehicle authenticated by Coleman, and (3) an original
certified copy of the notice of filing of certified public record in regard to
the judgment on the traffic citation received by Conway.  Conway and the City replied to Coleman's
response with objections to his summary judgment evidence.  They objected to the affidavit of Coleman,
stating that his testimony was not based on personal knowledge and was not
appropriate summary judgment testimony, and to the traffic citation as being
inadmissable as evidence in a civil suit. 
By its order of April 22, 2004, the trial court sustained Conway and the
City's objections to Coleman's summary judgment evidence.  

A.  Standard
of Review 








The standards for determining the admissibility of
evidence in a summary judgment proceeding are the same as those applied in a
trial.  United Blood Servs. v.
Longoria, 938 S.W.2d 29, 30 (Tex. 1997). 
Decisions about the admissibility of evidence are left to the sound
discretion of the trial court.  Owens‑Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Gee v. Liberty
Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989); Pegasus Energy
Corp. v. Cheyenne Petroleum Co., 3 S.W.3d 112, 133 (Tex. App.BCorpus Christi 1999, pet. denied).  An abuse of discretion exists when the
court's decision is arbitrary or unreasonable. 
Aquamarine Operators, Inc., 701 S.W.2d at 241.

1.  Coleman's
Affidavit

To constitute competent summary judgment evidence,
affidavits must be made on personal knowledge, set forth facts as would be
admissible in evidence, and show affirmatively that the affiant is competent to
testify to matters stated therein.  Tex. R. Civ. P. 166a(f); Krishnan v. Law Offices of Preston
Henrichson, P.C., 83 S.W.3d 295, 299 (Tex. App.BCorpus Christi 2002, pet. denied).  An affidavit by an interested party must be
clear, positive and direct, credible and free from contradictions and
inconsistencies, and capable of being readily controverted. Tex. R. Civ. P. 166a(c); Krishnan, 83 S.W.3d at 299.  An affidavit supporting or opposing a motion
for summary judgment must set forth facts.  Krishnan, 83 S.W.3d at 299.  An affidavit made on "knowledge and
belief" is insufficient as an affidavit unless authorized by special
statute.  Slater v. Metro Nissan of
Montclair, 801 S.W.2d 253, 254 (Tex. App.BFort
Worth 1990, writ denied) (citing State ex. rel. Simmons v. Moore, 774
S.W.2d 711, 715 (Tex. App.BEl Paso 1989, no writ)).  








Conway and the City objected to Coleman's affidavit
which he offered as summary judgment proof. 
Conway and the City asserted that Coleman did not base the affidavit on
personal knowledge as the affidavit reflected Coleman's belief on at least one
point: "I did not see any police emergency lights or hear any siren as I
approached Wells Street, therefore, I do not believe that the police car had
the emergency lights or siren activated." 


Coleman's assertion that he did not believe that the
police car had the emergency lights or siren activated is not capable of being
readily controverted.  See  Tex.
R. Civ. P. 166a(c); Krishnan,
83 S.W.3d at 299.  The trial court could
have concluded it is impossible to controvert a person's belief.  As such, the trial court did not abuse its
discretion in sustaining Conway and the City's objections to Coleman's
affidavit.

2.  The
Traffic Citation








"Supporting and opposing affidavits shall be
made on personal knowledge, shall set forth such facts as would be admissible
in evidence . . . ."  Tex. R. Civ. P. 166a(f).  Unless
a plea of guilty to a traffic offense was made in open court, according to law,
evidence of such guilty plea is not admissible in a civil suit for damages
arising out of negligence giving rise to the charge.  Cox v. Bohman, 683 S.W.2d 757, 758
(Tex. App.BCorpus Christi 1984, writ ref'd n.r.e.) (citing Barrios
v. Davis, 415 S.W.2d 714, 716 (Tex. Civ. App.BHouston
1967, no writ)).  In the instant case,
appellant does not direct our attention to any proof of a guilty plea in
response to the traffic citation in question. 
In fact, the judgment accompanying the traffic citation indicates that
the state's attorney dismissed the charge. 
We conclude that the trial court did not abuse its discretion in
sustaining Conway and the City's objection to the traffic ticket as evidence
offered in response to their motion for summary judgment.  

We overrule Conway's second issue on appeal.

V.  The Trial
Court's Award of Summary Judgment Against Coleman

Coleman appeals the trial court's award of summary
judgment in favor of Conway and the City, asserting that a genuine issue of
material fact exists with respect to the prong of the immunity analysis
requiring that the official be acting in good faith.  See City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994).

On February 12, 2004, Conway and the City together
filed their motion for summary judgment, stating that the doctrine of official
immunity entitled Conway to summary judgment. 
The City asserted it was entitled to summary judgment based on the
argument that, once a government employee has established entitlement to
official immunity, the public entity is also entitled to summary judgment under
the immunity doctrine.  The motion
additionally asserted governmental immunity on behalf of the City and
maintained that the criteria of the Texas Tort Claims Act was not satisfied as
a matter of law.  Conway and the City
attached the following to their motion for summary judgment:  (1) the affidavit of Danny Allen Conway; and
(2) a "Motor Vehicle Pursuit" memo issued by Felipe Garza, Chief of
Police for the City of Kingsville.








On April 15, 2004, Coleman filed a motion to strike
the evidence attached to Conway and the City's motion for summary
judgment.  He also filed a response to
that motion.  Coleman asserted that the
motor vehicle pursuit guidelines were improper summary judgment evidence as the
guidelines were not an original, certified copy.  Coleman additionally requested that Conway's
affidavit be struck on grounds that it was conclusory.[10]  

Conway and the City responded to Coleman's motion to
strike by stating that the guidelines were properly authenticated and, if not,
the proper remedy was to allow leave to amend as the objection went to the form
rather than to the substance of the proof. 
Conway and the City additionally pointed out that Coleman's objections
were not specific and should therefore be disregarded.  

Coleman's response to Conway and the City's motion
for summary judgment included (1) Coleman's affidavit, (2) copies of photographs
of Coleman's vehicle, authenticated by Coleman, and (3) an original certified
copy of the notice of filing of certified public record in regard to the
judgment on the traffic citation received by Conway.  In his response, Coleman alleged he had not
had adequate time and opportunity for discovery, as he had not been able to
take the deposition of Conway.

A.  Standard
of Review 








The propriety of a summary judgment is a question of
law.  See Natividad v. Alexsis Inc.,
875 S.W.2d 695, 699 (Tex. 1994).  We
therefore review the decision de novo.  See
id.  The function of a summary
judgment is to eliminate patently un-meritorious claims and defenses, not
to deprive litigants of the right to a jury trial.  Alaniz v. Hoyt, 105 S.W.3d
330, 344 (Tex. App.BCorpus Christi 2003, no pet.).  We review the evidence "in the light
most favorable to the nonmovant, disregarding all contrary evidence
and inferences."  See KPMG
Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748
(Tex. 1999); Branton v. Wood, 100 S.W.3d 645, 646 (Tex. App.BCorpus Christi 2003, no pet.).  The movant bears the burden of showing
both no genuine issue of material fact and entitlement to judgment as
a matter of law.  Hoyt, 105 S.W.3d at
345.  We review a summary judgment
de novo to determine whether a party established its right to prevail
as a matter of law.  Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548‑49 (Tex. 1985); Ortega
v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex. App.BCorpus Christi 2003, no pet.).

A motion for summary judgment may be based on the
affirmative defense of governmental immunity. 
Poncar v. Mission, 797 S.W.2d 236, 239 (Tex. App.BCorpus Christi 1990, no writ) (citing Shives v.
State, 743 S.W.2d 714, 715 (Tex. App.BEl Paso 1987, writ denied)); see Davis v. City of
San Antonio, 752 S.W.2d 518, 519‑20 (Tex. 1988).  In order to prevail, every factual element of
an affirmative defense must be conclusively established.  Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex.
1972); Mission, 797 S.W.2d at 239; see Montgomery v. Kennedy, 669
S.W.2d 309, 314 (Tex. 1984).  Conversely,
a plaintiff can bar a defendant's entitlement to a summary judgment by
responding with evidence that creates a fact question on at least one element
of each affirmative defense advanced by the defendant.  Mission, 797 S.W.2d at 239 (citing Emmer
v. Phillips Petroleum Co., 668 S.W.2d 487, 490 (Tex. App.BAmarillo 1984, no writ.)). 








B.  The Law

A party against whom a claim is asserted may, at any
time, move with or without supporting affidavits for a summary judgment in his
favor as to all or any part thereof.  See
Tex. R. Civ. P. 166(b).  Official immunity is an affirmative defense
that protects government employees from personal liability.  See Univ. of Houston v. Clark, 38
S.W.3d 578, 580 (Tex. 2000).  When a
governmental employee is shielded by official immunity, sovereign immunity
shields the governmental employer from vicarious liability.  See id.  The purpose of the doctrine of official
immunity is to protect public officers from civil liability for conduct that
would otherwise be actionable.  See
City of Lancaster v. Chambers, 883 S.W.2d 650, 653-54 (Tex.  1994). 
A governmental official is entitled to official immunity (1) for the
performance of discretionary duties, (2) within the scope of the employee's
authority, (3) provided the employee acts in good faith.  See Chambers, 883 S.W.2d at 653.  As official immunity is an affirmative
defense, to obtain summary judgment on official immunity, the governmental
employee must conclusively prove each element of the defense.  See Kassen v. Hatley, 887 S.W.2d 4, 8‑9
(Tex. 1994).

1. 
Performance of a Discretionary Duty

The court's focus should be on whether the officer
is performing a discretionary 








function, not on whether the officer has discretion
to do an allegedly wrongful act while discharging that function.  Chambers, 883 S.W.2d at 653.  Those acts where the law prescribes and
defines the duties to be performed with such precision and certainty as to
leave nothing to the exercise of discretion or judgment are ministerial acts.  Id. at 654 (citing Comm'r of
Gen. Land Office v. Smith, 5 Tex. 471, 479 (Tex. 1849)).  Acts involving the exercise of discretion or
judgment are not to be deemed merely ministerial.  Id. (citing Wyse v. Dep<t of Pub. Safety, 733 S.W.2d 224, 227 (Tex. App.BWaco 1986, writ ref'd n.r.e.)).  The Texas Supreme Court has stated that the
decision to pursue a particular suspect will fundamentally involve the
officer's discretion, because the officer must, in the first instance, elect
whether to undertake pursuit.  Id.
at 655.  The reasoning behind this
determination is that "beyond the initial decision to engage in the chase,
a high speed pursuit involves the officer's discretion on a number of levels,
including, which route should be followed, at what speed, should back‑up
be called for, and how closely should the fleeing vehicle be
pursued."  Id.  Courts have found the decision to pursue a
vehicle to be discretionary even in instances where the officer's superior
ordered the officer to give chase.  See
Clark v. City of Houston, 60 S.W.3d 206, 208 (Tex. App.BHouston [14th Dist.] 2001, no pet.) (finding
discretionary duty where the officer was initially ordered to pursue the
suspect, but the conduct of the pursuit was left to his discretion).  The complex policy judgment reflected by the
doctrine of official immunity, if it is to mean anything, protects officers
from suit even if they acted negligently.  Id. at 654 (citing Chapman v. Gonzales,
824 S.W.2d 685, 687‑88 (Tex. App.BHouston [14th Dist.] 1992, writ denied)).  








In his affidavit attached to the motion for summary
judgment, Conway states that on the night in question, Johnny Campos, Conway's
field training officer, was riding with Conway in the patrol unit.  At some point in the evening, Campos
instructed Conway to pursue a fleeing vehicle after the occupants of the
vehicle behaved suspiciously by failing to stop at a stop sign and disobeying
the officer's command to stop.  Conway
states that the decision to pursue a vehicle that is disregarding an officer's
instructions to stop is a topic that is included as part of the training as a
police officer.  Conway told Campos,
"to coordinate the pursuit with dispatch."  Conway "slowed for various dips and
traffic control devices" and activated his spotlight "to illuminate
the upcoming intersections and dips." 
He "continued to proceed with the pursuit under Campos' direction."  Conway slowed to clear an intersection, and
steered right, "at which time an impact occurred between [Conway's] unit
and the red vehicle."[11]








The fact that Conway gave chase at Campos'
instruction is not fatal to  Conway's
assertion that he was performing a discretionary duty when the accident
occurred.  See City of Houston, 60
S.W.3d at 208.[12]  Conway (1) instructed the driver over the
public address system to pull his vehicle over, (2) activated emergency lights,
(3) concurred with Campos' instruction to pursue the fleeing vehicle, (4)
activated his emergency siren, (5) told Campos to coordinate the pursuit with
dispatch, (6) activated his spot light, (7) continued to proceed with the
pursuit under Campos' direction because he believed the need to apprehend the
suspects outweighed the level of danger created by the pursuit, and (8) steered
the patrol unit to the right, immediately before the impact between the patrol
unit and Coleman's vehicle.  Each one of
these actions and decisions leading up to the collision show Conway's use of
discretion in pursuing the fleeing suspects.

2.  The Scope
of the Employee=s Authority

An official acts within the scope of his authority
if he is discharging the duties generally assigned to him.  Chambers, 883 S.W.2d at 658.  Courts have found officers to be acting
within the scope of their authority when the officers are (1) on duty, (2) in a
squad car, and (3) pursuing a suspect.  See
id. 








In Conway's affidavit, he states the City of
Kingsville employed him as a police officer at the time in question.  On the night of the accident in particular,
Conway was on patrol duty with his field training officer, Campos, traveling in
a patrol unit (or a squad car).  When the
accident in question occurred, Conway was engaged in pursuing a car following a
traffic violation.  The inhabitants of
the car exhibited nervous behavior and threatened the lives and property of
others by speeding through a convenience store parking lot.  The suspects had additionally disregarded a
command by Conway to stop and evaded arrest. 
We conclude that Conway was acting within the scope of his authority
when the accident occurred at a time when he was on duty, in a squad car, and
in pursuit of suspects at the time the accident occurred.  See Chambers, 883 S.W.2d at 658. 

3.  Good Faith

The supreme court has announced a test for good faith
in police pursuit cases, which recognizes the competing interests involved in
good faith cases:  (1) the injustice of
imposing liability on an officer whose job requires him to exercise discretion,
and the danger that such liability will deter his willingness to exercise that
discretion for the public good; and (2) the rights of the public who are
affected by an officer's bad faith acts.  Clark, 38 S.W.3d at 580-81 (citing Chambers,
883 S.W.2d at 656-57 n.7).  Under this
test, an officer acts in bad faith only if he could not have reasonably reached
the decision in question.  Id. at
581.  To obtain summary judgment on good
faith in a pursuit case, a police officer must prove that a reasonably prudent
officer, under the same or similar circumstances, could have believed that the
need to immediately apprehend the suspect outweighed a clear risk of harm to
the public in continuing the pursuit.  Clark,
38 S.W.3d at 581 (citing Chambers, 883 S.W.2d at 656‑57).  The Supreme Court of Texas announced in Chambers
that "a court must measure good faith in official immunity cases
against a standard of objective legal reasonableness, without regard to the
officer's subjective state of mind." Chambers, 883 S.W.2d at 656
(citing Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997)).








Under this test, the need element refers to the
"urgency of the circumstances requiring police intervention," or
"the seriousness of the crime or accident to which the officer responds,
whether the officer's immediate presence is necessary to prevent injury or loss
of life or to apprehend a suspect, and what alternative courses of action, if
any, are available to achieve a comparable result."  Clark, 38 S.W.3d at 581 (citing Wadewitz,
951 S.W.2d at 467).  The risk element of
good faith refers to "the countervailing public safety concerns," or
"the nature and severity of harm that the officer's actions could cause
(including injuries to bystanders as well as the possibility that an accident
would prevent the officer from reaching the scene of the emergency), the
likelihood that any harm would occur, and whether any risk of harm would be
clear to a reasonably prudent officer." 
Clark, 38 S.W.3d at 581 (citing Wadewitz, 951 S.W.2d at
467).








An officer must prove only that a reasonably prudent
officer might have believed that he should have continued the pursuit.  Id. (citing Chambers, 883
S.W.2d at 656‑57).  In the summary
judgment context, an officer in a police pursuit case must conclusively prove
that a reasonably prudent officer, under the same or similar circumstances,
could have believed that the need to immediately apprehend the suspect
outweighed a clear risk of harm to the public in continuing the pursuit.  Id. at 582; see Chambers,
883 S.W.2d at 656.  An officer does not
have to prove that it would have been unreasonable to stop the pursuit or that
all reasonably prudent officers would have continued the pursuit.  Clark, 38 S.W.3d at 582 (citing
Chambers, 883 S.W.2d at 656). An officer likewise should not be required
in his affidavit to affirmatively negate the existence of all circumstances or
risks that did not actually exist.  Id.
at 586.  The courts recognize that an
officer may not be able to thoroughly analyze each need or risk factor in every
circumstance, and that this alone should not prevent the officer from
establishing good faith.  See Travis
v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992).  Police officers must make their decisions
about pursuing a suspect rapidly and while under pressure.  See id.  Good faith is not a mechanical inquiry but
depends on the particular facts presented. Telthorster v. Tennell, 92
S.W.3d 457, 465 (Tex. 2002).  When an
officer exceeds the bounds of reason- ableness, good faith cannot be shown, and
the officer will not enjoy official immunity's protection.  Id. at 465 (citing Chambers,
883 S.W.2d at 656‑57).

To controvert a police officer's summary judgment
proof on good faith, the nonmovant must do more than show that a reasonably
prudent officer could have decided to stop the pursuit.  See Chambers, 883 S.W.2d at 657.  The nonmovant must show that no reasonable
person in the officer's position could have thought that the facts justified
the officer's acts.  See id. at
656.  "Under Chambers, good
faith depends on how a reasonably prudent officer could have assessed both the need
 to which an officer responds and the
risks of the officer's course of action, based on the officer's
perception of the facts at the time of the event.  Wadewitz, 951 S.W.2d at 467 (citing
Chambers, 883 S.W.2d at 656).








In University of Houston, the supreme court
considered an affidavit much like Conway's affidavit.  See Clark, 38 S.W.3d at 584-85.  In determining whether the affidavit
satisfied the need factors under Wadewitz, the court enumerated facts in
the affidavit that established good faith in an officer in pursuit case.  See id.; Wadewitz, 951 S.W.2d
at 467.  The court called attention to
those facts that demonstrated (1) the seriousness of the situation, (2) the
need to immediately apprehend the suspect, and (3) the availability of
alternative actions to apprehend the suspect as satisfying the requirements
under Wadewitz.  Clark, 38
S.W.3d at 585; Wadewitz, 951 S.W.2d at 467.  In that case, the officer's deposition
described (1) the conduct of the suspect, in that it made the situation a
serious one; (2) the fact that the suspect put others in danger, in that there
was a need to immediately apprehend the suspect; and (3) that the suspect had
not been identified, leaving alternative actions to apprehend the suspect at a
later time improbable.  See Clark,
38 S.W.3d at 585.








Conway's affidavit addresses the need factors under Chambers
and Wadewitz, beginning  with
the seriousness of the situation, by detailing the actions and demeanor of the
suspects.  Conway avers that the vehicle
was occupied "by three subjects" and that he "could observe the
driver and his passengers who appeared nervous."  Conway described how the driver ignored his
command to stop as well as Conway's overhead emergency lights.  According to the affidavit, the driver then
pulled into a parking lot, accelerating between gas pumps in an area where
"other vehicles and pedestrians were present."  Conway continued, "[t]he manner and high
speed in which the suspect operated his vehicle caused me to believe that the
suspect posed a danger to the public." 
In addition, Conway states that "the suspects accelerated at a high
rate of speed."  Conway saw the car
become airborne twice and refers to sparks he saw coming from the undercarriage
of the vehicle as the car came back into contact with the roadway.  He addressed the need to immediately
apprehend the suspect in his statement that the suspects' "continued
pattern of disregard for public safety increased [his] suspicion as to the
possible criminal conduct in which the suspects were engaged.  [He] believed the suspects were fleeing to
avoid detection of some criminal behavior."  Conway also stated that he "never saw
brake lights turn on from the suspect vehicle."  Finally, Conway addressed the availability of
alternative actions to apprehend the suspect by stating that he and Campos
"had a description of the vehicle and a partial license plate number"
but "did not have any identification of the suspects.  Thus, apprehension at some future time would
be unlikely."  








Conway's affidavit demonstrates consideration of the
risk factors under Chambers and Wadewitz as well.  See Wadewitz, 951 S.W.2d at 467.  The risk aspect of good faith refers to the
countervailing public safety concerns: 
the nature and severity of harm that the officer's actions could cause,
the likelihood that any harm would occur, and whether any risk of harm would be
clear to a reasonably prudent officer.  See
id.  In his deposition, Conway listed
the factors he considered before initiating the pursuit:  (1) the time of day, and the corresponding
amount of business or activity on the street; (2) the volume of vehicular
traffic, of which there was "very little"; (3) the location of the pursuit;
(4) the weather conditions; (5) the road conditions; (6) the speed involved;
(7) the nature of the charges; and (8) the volume of pedestrian traffic.  Later Conway states, "Again, the factors
discussed above were weighed, and I continued to proceed with the pursuit under
Compos' [sic] direction because I believed the need to apprehend these suspects
outweighed the level of danger created by the pursuit."  As such, we conclude that Conway's affidavit
adequately assesses the need and risk factors to prove good faith under Wadewitz
and Chambers.  See id.
at 467; Chambers, 883 S.W.2d at 656. 

Conway's affidavit conclusively establishes every
factual element of his affirmative defense. 
See Chambers, 883 S.W.2d at 653. 
The summary judgment evidence shows that there is no genuine issue of
material fact and that Conway is entitled to judgment as a matter of law on his
affirmative defense of official immunity. Hoyt, 105 S.W.3d at
345.  As we conclude that Conway, a
governmental employee, has adequately proven his affirmative defense of
official immunity, we also necessarily 
conclude that sovereign immunity precludes any claim against the City by
Coleman.  See Clark, 38 S.W.3d at
580.  The trial court did not err in
granting summary judgment against Coleman.  We overrule Coleman's third
issue on appeal.

VI. 
Conclusion

Having overruled Coleman's three issues on appeal,
we affirm the judgment of the trial court. 


ERRLINDA CASTILLO

Justice

Memorandum
Opinion delivered and filed 

this
the 21st_day of July, 2005.

 











[1] 
This is a memorandum opinion.  The
parties are familiar with the facts.  We
will not recite them here except as necessary to advise the parties of our
decision and the basic reasons for it.  See Tex.
R. App. P. 47.4. 





[2] 
Section 101.021 of the Texas Civil Practice and Remedies Code states:

 

101.021 Governmental Liability

 

A governmental unit in the state is
liable for: 

 

(1) property damage, personal
injury, and death proximately caused by the wrongful act or omission or the
negligence of an employee acting within his scope of employment if: 

 

(A) the property damage, personal
injury, or death arises from the operation or use of a motor-driven vehicle or
motor-driven equipment; and 

 

(B) the employee would be
personally liable to the claimant according to Texas law; and 

 

(2) personal injury and death so
caused by a condition or use of tangible personal or real property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law.

 

Tex. Civ. Prac.
& Rem. Code Ann.
' 101.021 (Vernon 2005).





[3] 
The letter, written on Cassidy and Raub PLLC letterhead, communicates
Raub's desire to take the deposition of Conway. 
The letter references the fact that Coleman's response to the motion for
summary judgment filed by Conway and the City is due in the two-week period
following the date of the letter.  The
letter requests that Conway be available for deposition in the next few days.





[4] 
We assume the transmission record relates to the letter dated April 2,
2004, which indicates it was sent by fax.





[5] 
The letter, on Cassidy and Raub PLLC letterhead, communicates a request
for a certified  copy of the accident
report made on November 11, 2002.  The
letter states that the six dollar fee was enclosed.





[6] 
The letter, also on Cassidy and Raub PLLC letterhead, again communicates
a request for a certified copy of the accident report made on November 11,
2002.  The letter states:  "We did not receive the correct
documents requested and the documents we received were not even
certified."





[7] 
The motion for continuance also incorporated Coleman's motion to strike
Conway and the City's evidence. 





[8] 
The Trial Court's order of April 22, 2004 states:

 

On the 22nd day of April 2004, came
on to be considered Defendant's Motion for Summary Judgment, Plaintiff's Motion
for Continuance of said summary judgment hearing, and Plaintiff's Motion to
Strike Evidence.  After considering said
motions and responses, and after hearing arguments of counsel, the court makes
the following rulings.  It is hereby,
ORDERED, that Plaintiff's Motion for Continuance is hereby DENIED. It is
further , ORDERED, that Plaintiff's Motion to Strike Evidence is hereby
DENIED.  It is further, ORDERED, that
Defendants' Objections to Plaintiff's summary judgment proof is [sic] hereby
SUSTAINED.  It is further, ORDERED, that
Defendants' Motion for Summary Judgment is hereby GRANTED. 

SIGNED this _______ day of APR 22 2004.





[9] 
Again, the trial court's order of April 22, 2004 denied Coleman's motion
for continuance as well as granted Conway and the City's motion for summary
judgment.





[10] 
Coleman does not appeal the trial court's denial of his motion to strike
the evidence.  





[11] 
"The red vehicle" refers to Coleman's vehicle.





[12] 
In that case, our sister court construed the Chambers decision as
follows: "[I]t is important to note that the defendants in Chambers included
both the police officer who saw the original moving violation, and thus
initiated the pursuit, and three other officers who joined the chase at the
original officer's request for assistance. 
We assume some of these officers were following orders when they joined
the pursuit; yet the supreme court did not distinguish between the officers in
holding that their pursuit was a discretionary act."  Clark, 60 S.W.3d at 209.