

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

June 27, 2016

Mr. Mike Morath
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. KP-0099

Re:  Whether a school district board of trustees may enter into a contract for legal services under a flat fee arrangement (RQ-0088-KP)

Dear Commissioner Morath:

Your predecessor asked for "guidance about whether an independent school district Board of Trustees . . . may lawfully enter into a contract for legal services that provides that the district will pay a minimum flat fee for legal services regardless [of] how many hours are worked by the law firm."[1] Your predecessor explained that a lawsuit was filed by the district and three individual members of the Board of Trustees to challenge the closure of the district and future placement of a board of managers after the district's accreditation had been revoked due to failed accountability ratings. *See* Request Letter at 1; *see also* TEX. EDUC. CODE § 39.102(a)(9), (b) (providing for the appointment of a board of managers). According to your predecessor, the contract at issue is reportedly for a flat fee of $300,000 which, at the law firm's alleged hourly rate of $400, would cover up to 750 hours of legal services, beyond which the district would be billed. Request Letter at 1. But, as stated in the request letter, "the Board of Managers assumed control over the district—and the Board of Trustees lost control of the district—subsequent to execution of the contract and payment of the fee." *Id.* Your predecessor thus asked "whether this agreement may amount to an unconstitutional gift of public funds" under article III, section 52(a) of the Texas Constitution. *Id.* We have not been provided a copy of the agreement in question, nor does this office construe or approve specific contracts. Tex. Att'y Gen. Op. No. KP-0041 (2015) at 4 (stating that "construction of a contract is beyond the scope of an attorney general opinion"). While we cannot provide a definitive answer regarding the legality of the contract in question, we can provide general guidance about the questions your predecessor asked.

School district trustees generally "have the exclusive power and duty to govern and oversee the management of the public schools of the district," including the authority to "sue and be sued." TEX. EDUC. CODE § 11.151(a)–(b); *see also id.* § 11.1511(c)(4) (authorizing a school board to "enter into contracts"); *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 242 (Tex.

---

[1]Letter from Mr. Michael Williams, Comm'r of Educ., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Dec. 31, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter"); *see also* Letter from Mr. Mike Morath, Comm'r of Educ., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Jan. 8, 2016) (on file with the Op. Comm.) (confirming intention to proceed with the opinion request after succeeding Mr. Williams as Commissioner of Education).

App.—Dallas 2000, pet. denied) (noting that "[s]chool board trustees have broad authority to expend funds to . . . initiate lawsuits in matters relating to their office and to district management"). In the exercise of this duty, a school board must stay within the bounds of article III, section 52(a) of the Texas Constitution. This provision prohibits the Legislature from authorizing a political subdivision, including a school district, to grant public money or anything of value to an "individual, association or corporation." TEX. CONST. art. III, § 52(a). The purpose of article III, section 52(a) is to prevent the gratuitous grant of public funds for private purposes. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). The Texas Supreme Court has recognized that an expenditure of public funds that is for a public purpose and that provides a clear public benefit in return, however, is not an unconstitutional grant of public funds. *See Texas Mun. League Intergov'tl Risk Pool v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002). The court articulated a three-part test to determine whether an expenditure of public funds accomplishes a public purpose as contemplated by article III, section 52(a). *Id.* at 384. Based on that test, the school board's expenditure for legal services would accomplish a public purpose under article III, section 52(a) if (1) the expenditure's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) sufficient control over the expenditure is retained to ensure that the public purpose is accomplished; and (3) the school district receives a return benefit. *See id.*; *see also* Tex. Att'y Gen. Op. No. GA-0076 (2003) at 6–7 (applying the three-part test to a school district expenditure).

Regarding the first prong of the test, whether a public purpose is served by a particular expenditure as contemplated under article III, section 52(a) raises fact questions that cannot be answered in an attorney general opinion and would be a decision for the governmental body of the school district to determine in the first instance, subject to judicial review. *See* Tex. Att'y Gen. Op. Nos. GA-0076 (2003) at 7, KP-0056 (2016) at 2. However, an expenditure which incidentally benefits another party is not invalidated under the constitution if it is made for the direct accomplishment of a legitimate public purpose. *Barrington v. Cokinos*, 338 S.W.2d 133, 140 (Tex. 1960). Thus, an incidental benefit to individual trustees does not raise article III, section 52(a) concerns if the contract is predominantly for the direct accomplishment of a legitimate public purpose of the school district.

Regarding the second prong, your predecessor contended that "because the . . . Trustees . . . no longer have authority to control litigation on behalf of the district, they consequently have no means to ensure that the services provided are sufficient to accomplish a public purpose for the district." Request Letter at 2. When a board of managers is appointed to govern a school district, "the powers of the board of trustees of the district are suspended for the period of the appointment," during which time the managers "exercise all of the powers and duties assigned to a board of trustees . . . by law, rule, or regulation." TEX. EDUC. CODE § 39.112(a)–(b). In some respects, this transfer of authority is effectively no different than when outgoing trustees whose terms have ended are replaced by incoming trustees. *See id.* § 11.059 (b)–(c) (providing for staggered terms of either three or four years). The principal constitutional concern regarding control measures is not who is implementing them but whether such controls ensuring that the expenditure serves a public purpose exist in the first place. In other circumstances, this office has concluded that an agreement for legal services can itself provide the requisite control to satisfy the requirements of article III, section 52(a). *See* Tex. Att'y Gen. Op. No. GA-0078 (2003) at 5 (concluding that a commissioners court could find that the terms of a proposed contract for internet

legal research services provides sufficient control to ensure that the public purpose is carried out); *see also Key v. Comm'rs Ct. of Marion Cty.*, 727 S.W.2d 667, 669 (Tex. App.—Texarkana 1987, no writ) (providing that contractual terms may suffice to provide the requisite control). Whether sufficient controls exist in this specific contract is a question we cannot answer, but the fact that the trustees have been replaced by a board of managers does not affect whether control measures to ensure the expenditure serves a public purpose were put into place when the expenditure was made. *See* Request Letter at 2.

Regarding the third prong, your predecessor questioned the return benefit provided to the district, noting the possibility that the payment could constitute a "windfall" if the law firm worked less than 750 hours. *Id.* Article III, section 52(a) requires that a return benefit be received in exchange for the expenditure of public funds. *Texas Mun. League*, 74 S.W.3d. at 383. What constitutes a sufficient return benefit in this case could depend on a number of factors in addition to the number of hours of legal services rendered, such as the complexity of the case and the quality of the representation. Only sufficient—not equal—consideration is required to keep a political subdivision's expenditure of public funds from being unconstitutional. *Id.* at 384. Under contract law principles, a court generally will not inquire into the adequacy of consideration supporting a contract. *Parker v. Dodge*, 98 S.W.3d 297, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.). However, "if there is such a gross disparity in the relative values exchanged as to show unconscionability, bad faith, or fraud," a court may examine the adequacy of the contract in the interest of equity. *Id.* Under such circumstances, a question could arise as to whether the contract provides a return benefit sufficient to satisfy the requirements of article III, section 52(a).

The Texas Supreme Court has explained that an expenditure of public funds must also provide a clear public benefit in order to comply with article III, section 52(a). *See Texas Mun. League Intergov'tl Risk Pool*, 74 S.W.3d at 383. Your predecessor alleged that "there is no demonstrable public benefit to challenging closure of the district" and that, instead, the expenditure "ultimately benefits the individual board member plaintiffs rather than the district." Request Letter at 2. Whether the public would benefit from the expenditure is a fact question that would require looking into the background of the contract. Such a determination cannot be made in the abstract and is not appropriate for the opinion process.[2] *See* Tex. Att'y Gen. Op. No. KP-0091 (2016) at 2 ("[f]act finding is beyond the scope of an attorney general opinion").

Your predecessor also asked whether an agreement including "a non-refundable flat fee for [the] provision of future legal services" that was in violation of Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct (the "Rules") would violate article III, section 52(a). Request Letter at 2. The Rules generally define proper conduct of attorneys for purposes of professional discipline. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT preamble ¶ 10, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). Rule 1.04 prohibits a lawyer from charging an "unconscionable fee." *Id.* R. 1.04. "A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." *Id.* R. 1.04(a); *see also id.*

---

[2]However, even as a theoretical matter, boundaries exist beyond which there is clearly no public purpose. *See* Tex. Att'y Gen. Op. No. DM-431 (1997) at 1–2 (concluding that a county could not reimburse an incumbent sheriff for attorney's fees incurred in defending an election contest because the contest involved only his personal interest as a candidate and not his interest as a county official or the interests of the governmental entity).

R. 1.04(b)(8) (including "whether the fee is fixed . . . before the legal services have been rendered" among factors that may be considered in determining the reasonableness of a fee). The Texas Supreme Court Committee on Professional Ethics has explained that while the Rules "do not prohibit a lawyer from entering into an agreement with a client that requires the payment of a fixed fee at the beginning of the representation," the deposit and treatment of such fees by a lawyer can, under certain circumstances, result in a violation of the Rules.[3] Tex. Comm. on Prof'l Ethics, Op. 611, 2011 WL 5831792, at *2 (2011).

The Rules provide an avenue for filing a grievance against an attorney under the Texas Rules of Disciplinary Procedure. TEX. RULES DISCIPLINARY P. R. 2.10, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A-1. However, we find no authority for using an alleged violation of the Rules as direct evidence of an unconstitutional expenditure under article III, section 52(a). To the extent that underlying circumstances forming the basis for an alleged violation of the Rules suggest that an expenditure does not comport with the requirements of article III, section 52(a), a court would rely on the test in *Texas Municipal League* to make that determination. *See, e.g., Morales v. Hidalgo Cty. Irrigation Dist.*, No. 13–14–00205–CV, 2015 WL 5655802, at *3 (Tex. App.—Corpus Christi Sept. 24, 2015, pet. denied) (mem. op.) (applying the *Texas Municipal League* analysis to an employment contract in the context of early termination).

Finally, your predecessor asked, in the event that the district severed the agreement with the law firm, whether the firm's subsequent refusal to refund unspent funds would violate the constitution. Request Letter at 2. As we understand the hypothetical, the expenditure of public funds would have already occurred, and the issue would be whether the refusal of the law firm to issue a refund would change the nature of the return benefit so as to potentially trigger constitutionality concerns. Whether a public purpose is served by a particular expenditure as contemplated under article III, section 52(a) is a determination for a political subdivision to make in the first instance, subject to judicial review. Tex. Att'y Gen. Op. No. KP-0056 (2016) at 2. Because such a determination is generally made at the time the contract is entered into, it is unlikely that a court would consider conduct subsequent to the contract's execution, particularly the actions of a private party, in determining whether the contract itself violates article III, section 52(a). However, if the contract allows for the possibility that the law firm would not perform, it may raise constitutional questions about whether sufficient control over the expenditure was retained to ensure that the public purpose is accomplished.

---

[3]In particular,

> [a] lawyer is not permitted to enter into an agreement with a client for a payment that is denominated a "non-refundable retainer" but that includes payment for the provision of future legal services rather than solely for the availability of future services. Such a fee arrangement would not be reasonable under Rule 1.04(a) and (b), and placing the entire payment, which has not been fully earned, in a lawyer's operating account would violate the requirements of Rule 1.14 to keep funds in a separate trust or escrow account when the funds have been received from a client but have not yet been earned.

Tex. Comm. on Prof'l Ethics, Op. 611, 2011 WL 5831792, at *2 (2011).

## S U M M A R Y

Under the test articulated by the Texas Supreme Court, a school district's contract for legal services would violate article III, section 52(a) of the Texas Constitution if (1) the expenditure's predominant purpose does not accomplish a public purpose, but instead benefits private parties; (2) sufficient control over the expenditure is not retained to ensure that the public purpose is accomplished; (3) the school district does not receive a return benefit; and (4) the expenditure fails to provide a clear public benefit in return. Whether a public purpose is served by a particular expenditure raises fact questions that cannot be answered in an attorney general opinion and would be a decision for the school district in the first instance, subject to judicial review.

In utilizing this test to evaluate public expenditures, Texas courts have suggested that (1) an incidental benefit to individual trustees does not invalidate the expenditure if the contract is predominantly for the direct accomplishment of a legitimate public purpose of the school district; (2) the principal constitutional concern regarding control measures is not who is implementing them but whether such controls are put into place to begin with; and (3) what constitutes an adequate return benefit depends on a variety of specific circumstances but is called into doubt if there is such a gross disparity in the relative values exchanged as to show unconscionability, bad faith, or fraud.

To the extent that circumstances forming the basis for an alleged violation of the Texas Disciplinary Rules for Professional Conduct suggest that an expenditure does not comport with the requirements of article III, section 52(a), a court would rely on the test articulated by the Texas Supreme Court to make that determination. However, it is unlikely that a court would consider conduct subsequent to a contract's execution in determining whether the contract itself violates article III, section 52(a).

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee